[No. E011775. Fourth Dist., Div. Two. July 12, 1995.]

RANDI SUE RUSSELL et al., Plaintiffs and Respondents, v.
NANCY DOPP, Defendant and Appellant.

**COUNSEL**

Brown & Bertram and Jeffrey S. Bertram for Defendant and Appellant.

Patricia A. Swanson and Michael J. Wolf for Plaintiffs and Respondents.

**OPINION**

**HOLLENHORST, J.**—A judgment was entered against defendants Gussman, Dopp and Stillwater Institute after a jury trial despite the trial court's discovery that defendants' attorney was not authorized to practice law. The trial court refused to grant a mistrial and denied a motion for new trial on grounds that the defendants knew or should have known their attorney was not an attorney. Defendant Dopp appeals, arguing that the trial court erred procedurally and that the evidence was insufficient to support the trial court's finding as to her. We agree and reverse.

### THE UNDERLYING ACTION

Plaintiff Randi Sue Russell sued Robert Gussman, Nancy Dopp and Stillwater Institute, doing business as Green Pastures, alleging that Mr. Gussman molested her daughter. Mr. Gussman was a former patient and employee of Green Pastures, and Mrs. Dopp was the administrator of the facility. Green Pastures is a care facility for developmentally disabled adults in Cherry Valley, California.

At trial, plaintiffs presented sufficient evidence to support the jury's findings that (1) Mr. Gussman committed a battery on the minor; (2) Mrs.

Dopp and Stillwater were negligent; and (3) their negligence was a legal cause of injury to plaintiffs.[1]

The jury returned a verdict of $1,002,000 in favor of plaintiffs, including punitive damages of $100,000 awarded against defendants Gussman and Dopp.

### FACTS RE DEFENDANTS' COUNSEL

After the action was filed, defendants turned the case over to their insurance company, which provided counsel to represent Mrs. Dopp and Stillwater. Subsequently, the insurance company denied coverage, and defendants retained their own counsel.

The substitution of attorneys form states that defendants' new counsel is Drew R. Antablin. It is undisputed that Drew R. Antablin is a licensed California attorney. However, defendants were actually represented in this action by Vaughn Antablin, the father of Drew, and a person who had resigned from the practice of law in 1969.[2]

The law offices of Drew R. Antablin subsequently represented Mrs. Dopp and Stillwater in pretrial filings, including declarations purportedly signed by Drew R. Antablin. Mr. Drew Antablin's letterhead was used in correspondence and Mr. Vaughn Antablin apparently used his son's name freely in representing defendants.

The case was assigned to arbitration. The arbitrator awarded the minor $250,000 in compensatory damages, plus $250,000 in punitive damages. The arbitrator's award does not indicate who represented the parties in the arbitration, although the award was served on Drew Antablin. Drew Antablin subsequently served a request for trial de novo.

A person identified as Drew Antablin represented defendants at trial. A four-day jury trial was held, commencing on July 20, 1992. The jury began deliberations on Thursday, July 23, 1992, at 1:30 p.m. Deliberations continued on Friday, July 24, 1992.

On Monday, July 27, 1992, while the jury was deliberating, the trial court received information that Mr. Antablin was not an attorney. It then swore

---

[1] Mr. Gussman pled guilty to one count of committing a lewd and lascivious act upon a child under the age of fourteen years (Pen. Code, § 288, subd. (a)).

[2] It was not shown that Drew Antablin took any part in the representation of defendants in the action, although a number of actions were taken in his name or over his signature. Thus, in referring to Mr. Antablin, we are referring to Vaughn Antablin, whether he was using the name Drew Antablin or not.

Mr. Antablin and asked him his true name. Mr. Antablin replied: "Vaughn Drew Antablin." The trial court then disclosed that the State Bar had informed it that he had resigned with charges pending in 1969. Mr. Vaughn Antablin then admitted that he was not licensed to practice law in California. He also stated that Drew R. Antablin was his son, and that his son was a licensed attorney in California. The trial court then held him in contempt of court and ordered him jailed.

The trial court decided to allow the jury to continue deliberations. The jury returned the verdict for plaintiffs in the afternoon of July 27, 1992.

The trial court then decided to hold a hearing on whether it would accept the verdict (Code Civ. Proc., § 628). It ordered the clerk to notify Mr. Angove, president of Stillwater, and Mrs. Dopp to appear on Wednesday, July 29th.

### THE HEARING OF JULY 29, 1992

At an informal but on-the-record hearing on July 29, 1992, the trial court heard unsworn testimony by Mrs. Dopp, Pam James (her sister), and Mr. Angove, president of defendant Stillwater. The court also heard sworn testimony volunteered by Mr. Dopp.[3]

The trial court began by asking Mrs. Dopp about a statement overheard by the court reporter before trial and made by Mr. Dopp to the effect that there was an automatic appeal. The reporter did not testify, formally or informally, on the record to this statement and Mrs. Dopp denied any knowledge of the conversation.

The trial court then asked Mrs. Dopp when she learned that her attorney was not an attorney. She replied that she was told "last Thursday" (July 23) by her sister, Pam James.

Pam James then stated that, because she was concerned with Mr. Antablin's lack of preparation and poor performance, she had called the State Bar the preceding Thursday and learned that Vaughn Antablin had resigned in 1969.[4] She then called the district attorney's office and an investigator subsequently reported the matter to the trial court. She also denied knowledge of any conversation about an automatic appeal.

---

[3]Defendants were not present in court the preceding Friday. They were not represented by counsel at the July 29th hearing. Mrs. Dopp stated in her declaration that she was not "officially informed" of the problem until she appeared at the July 29th hearing.

[4]After the arbitration, Ms. James had called the State Bar and been told that Drew Antablin was an attorney in good standing with no disciplinary complaints. Although Ms. James was

Mr. Angove stated that he had employed Mr. Antablin by paying him a retainer of $2,500. He stated that they were led to Mr. Antablin by a paralegal who had worked on some cases with Jack Dopp.

The trial court then reminded Mr. Angove and Mrs. Dopp that they were under oath, apparently because they testified at trial, and asked them whether they had any knowledge that Mr. Antablin was not an attorney when the case started. They both answered negatively.

Mr. Jack Dopp was then sworn. He testified that he had suspicions that Drew Antablin might be Vaughn Antablin "two or three weeks ago" but he did not pursue them. He also stated that Drew Antablin had handled several cases for him.[5]

Plaintiffs' attorney then argued that the verdict should stand. She argued that, if a mistrial was declared, plaintiffs would be the innocent victims because they had spent the money necessary to go to trial. She asked that the trial court put the burden on defendants to show that they were unaware of the deception.

Nancy Dopp then reiterated that she had no prior knowledge or reason to suspect Mr. Antablin until her sister notified her on Thursday night. She also stated that she had not lived with her husband for the last 12 years, they did not work together, and she asserted that his statements were not relevant to the decisions of Green Pastures care facility.

The trial court then commented that Mr. Antablin "certainly did an inadequate job in this case" by letting in hearsay evidence and reports.[6] It then took a recess to consider the matter further. After the recess, the trial court cited the following general statement by Mr. Witkin: "A judgment obtained against a party represented by an unlicensed person is invalid." (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 294, p. 330.) Nevertheless, it found waiver and estoppel, based on (1) the unsworn out-of-court statements of the court reporter to the trial court that the reporter had

---

told the same thing on July 23, 1992, she learned that Drew Antablin had been born in 1952. She then was told that the only other Antablin in California was Vaughn Antablin, born in 1920, and he had not been an attorney since 1969. Since the Antablin Ms. James knew was an older man, she concluded that he was Vaughn Antablin.

[5]The record is not clear whether Mr. Dopp was referring to the real Drew Antablin or to Vaughn Antablin using his son's name.

[6]The court also commented: "If he's not incompetent, he is certainly a very bad attorney in my estimation . . . . I even referred to him a couple of times as incompetent to my staff. I don't know if he's really incompetent. That might be the heat of the moment when he did something incredibly foolish, as he did on a number of occasions. I think my staff would verify on a couple of occasions I was horrified how he was handling this case."

overheard Mr. Dopp say there was an automatic appeal; and (2) the statements of Mr. Dopp that he was suspicious of Mr. Antablin's true identity. The court found that Mr. Dopp had "more than sufficient knowledge that the alleged Drew Antablin was not Drew Antablin and was in fact a different person."[7]

With regard to appellant Nancy Dopp, the trial court went on to state: "It is inconceivable to me that Mr. Dopp did not pass on this information [his suspicions] to the defendants in this matter, especially in view of the statement overheard by the member of the staff. [¶] They had paid money to this gentleman, Vaughn, and I'm sure they thought maybe they could go through the trial and if they lost, perhaps they could appeal. [¶] I think the defendants had sufficient knowledge that Mr. Vaughn Antablin, who was present during this entire case, was not Mr. Drew Antablin, the alleged attorney for defendants. I think they chose to ignore it, feeling they might have two strokes to the ball. [¶] This is what is known in the law as estoppel and waiver." The court therefore concluded by finding it would be unfair to penalize plaintiffs "for something that the defendants did in trying to now get a mistrial in this matter." It ordered that judgment be entered on the verdict.

### SUBSEQUENT PROCEEDINGS

Mrs. Dopp then obtained new counsel and a motion for new trial was filed. The primary grounds of the motion were irregularity in the proceedings (Code Civ. Proc., § 657, subd. 1). She provided a declaration detailing the circumstances of Mr. Antablin's employment by Mr. Angove and reiterating that she had no prior knowledge that Mr. Antablin was not an attorney. Plaintiffs' attorney provided a counterdeclaration, reciting some of the statements made at the July 29th hearing.

The court again cited the off-the-record statements of the court reporter, and the testimony of Mr. Dopp. It attributed the knowledge of Mr. Dopp to Mrs. Dopp, saying, "I just could not believe that somebody who was as friendly with his ex-wife as apparently they have been and were throughout the entire trial, that he didn't pass on any of this information to her." The court found that Mr. Dopp and Mrs. Dopp had perpetrated a fraud on the court by planning that, if they went to trial and lost, they would immediately disclose that their attorney was not a licensed attorney.[8] Having found fraud, the trial court denied the new trial motion.

---

[7]Even if Mr. Dopp knew that Vaughn Antablin and Drew Antablin were different persons, there is no evidence that he knew the person he employed was not an attorney.

[8]Of course, the impersonation was discovered and reported by Mrs. Dopp's sister before the jury reached a verdict.

## Procedural Contentions

On appeal, Mrs. Dopp raises a number of procedural contentions regarding the July 29th hearing. She argues that the trial court erred by (1) failing to give her notice of the purpose of the July 29th hearing; (2) not telling her she had the right to counsel at the July 29th hearing; and (3) hearing arguments from plaintiff's counsel only.

In addition, Mrs. Dopp contends that the trial court failed to follow the provisions of Code of Civil Procedure section 286, citing *Aldrich* v. *San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725 [216 Cal.Rptr. 300] and *McMunn* v. *Lehrke* (1915) 29 Cal.App. 298, 308 [155 P. 473].[9] She also relies on her right to representation by counsel at a hearing, citing *Mendoza* v. *Small Claims Court* (1958) 49 Cal.2d 668 [321 P.2d 9].

We have serious reservations about the way in which the July 29th hearing was conducted. Its informality, including the taking of statements not under oath, and the trial court's repeated reliance on the off-the-record assertions of the court reporter, were not conducive to a truth-seeking hearing.[10]

Nevertheless, we find it unnecessary to consider the procedural irregularities in detail because we find that, even on the informal record, the evidence was insufficient to support the conclusion that Mrs. Dopp was aware of her attorney's fraud.

## Discussion

Two public policies underlie the strictures against the unlicensed practice of law. First, attorneys must be licensed so that the public is protected from being advised and represented by persons who are not qualified to practice law. (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 917-918 [69 Cal.Rptr. 612, 442 P.2d 692].) Second, the litigation of cases by unlicensed attorneys threatens the integrity of the judicial process itself. (*Alexander* v. *Robertson* (9th Cir. 1989) 882 F.2d 421, 423-425.)

[9]Code of Civil Procedure section 286 provides: "When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney, or to appear in person." No such notice was given here.

[10]Plaintiffs subsequently obtained a declaration from the court reporter and attempted to make it part of the record on appeal. We rejected the request by order filed December 9, 1993. It has not been considered in evaluating the substantiality of the evidence to support the trial court's conclusions. Of course, the trial court's reliance on such off-the-record statements does not inspire confidence in its deliberative process.

To further these two public policies, the unlicensed person who practices law is potentially subject to various criminal, civil and contempt sanctions.[11] ██ In this case, however, the only issue is whether the unlicensed representation also taints the judgment obtained against the clients of the unlicensed person. The resolution of this issue depends, in part, on whether the clients of the unlicensed person, defendants here, were victims of the unlicensed person or coparticipants in the fraud.

The trial court's resolution of the factual issue of whether the defendants were aware of the fraud or not relates to the first policy consideration, the protection of the public from unlicensed persons. Obviously, if the defendants were victims of the fraud, the policy basis for voiding the judgment is fully applicable to them. This is Mrs. Dopp's position. Under her version of the facts, the defendants were unaware victims of an unlicensed attorney who was not qualified to represent them and did so incompetently. As a result, they lost the lawsuit, and a million-dollar judgment was entered against Mrs. Dopp.

Conversely, if the defendants were aware of the fraud, the policy of protection of the public from unlicensed persons is inapplicable. Under plaintiff's version of the facts, the defendants knew they were being represented by an unlicensed person and intended to save the issue for appeal in the event they lost in the trial court. As a result, they participated in the fraud, and the judgment should stand. As discussed below, the trial court found this to be the situation here and the issue is whether the evidence was sufficient to support the trial court's decision.

The second policy consideration, protection of the integrity of the litigation process itself, does not depend on whether the clients were aware of the fraud or not. Policy considerations here relate to whether the integrity of the judicial process has been harmed by the unlicensed representation. Thus, for example, if the unlicensed person wins the lawsuit, the litigation process may be found to be unaffected by the fraud on the court. ██ To protect

---

[11]"Practicing law, or holding oneself out as practicing or entitled to practice law, while under suspension or transfer to inactive status by virtue of submission of one's resignation with charges pending, is both unlawful (Bus. & Prof. Code, § 6126) and a contempt (Bus. & Prof. Code, § 6127)." (*In re Johnson* (1992) 1 Cal.4th 689, 696, fn. 2 [4 Cal.Rptr.2d 170, 822 P.2d 1317].) Deceit on a court or a party is also a crime under Business and Professions Code section 6128. Of course, the imposter exposes himself or herself to civil liability as well. (*McKay* v. *Longsworth* (1989) 211 Cal.App.3d 1592 [260 Cal.Rptr. 250].)

In the criminal context, the representation of a criminal defendant by an unlicensed person is a deprivation of the defendant's constitutional right to counsel. (*In re Johnson, supra,* 1 Cal.4th 689.)

Cases from other jurisdictions on this general subject are collected in Annotation (1981) 7 A.L.R.4th 1146.

the integrity of the litigation process, the court has the inherent power to set aside a judgment for fraud on the court itself. (*Aldrich* v. *San Fernando Valley Lumber Co., supra*, 170 Cal.App.3d 725, 735-736.) Although reversal does not necessarily follow, such fraud may be found to include " 'fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.' " (*Alexander* v. *Robertson, supra*, 882 F.2d 421, 424, quoting 7 Moore & Lucas, Moore's Federal Practice (2d ed. 1978) [¶¶ 60.33, p. 515.) In *Alexander*, the court declined to reverse the judgment because doing so would "neither protect the integrity of the judicial system nor vindicate the interests of a party victimized by the unlicensed practice of law." (882 F.2d at p. 425.)

### PROTECTION OF THE PUBLIC FROM UNLICENSED PERSONS

The general American rule is that an unlicensed person cannot appear in court for another person, and that the resulting judgment is a nullity. (7 C.J.S., Attorney & Client, § 31, p. 869.)

In *Campbell* v. *Jewish Com. for P. Service* (1954) 125 Cal.App.2d 771 [271 P.2d 185], Campbell sued for an alleged libel directed at his brother. Without discussing the issue, the court commented that Campbell was appealing on his own behalf, and not in a representative capacity: "Not being a lawyer, Campbell cannot appear as attorney for his brother." (*Id.*, at p. 772.)

In *People* ex rel. *Dept. of Public Works* v. *Malone* (1965) 232 Cal.App.2d 531 [42 Cal.Rptr. 888], the court held that Carroll Malone, a person holding a special power of attorney, could not act as an attorney for his brother, Paul Malone, in litigation. The court quoted the *Campbell* case and held that a power of attorney does not permit an agent to act as an attorney at law. (*Id.*, at p. 536.) Accordingly, Carroll Malone did not have any right to act for his brother Paul in the litigation. (*Id.*, at p. 537.) The action of Carroll Malone in stipulating to a condemnation judgment on behalf of both brothers was held a nullity: "What Carroll purported to do for Paul in place of an attorney was a nullity, and that fact should have been known to the court and to opposing counsel." (*Id.*, at p. 537.) Accordingly, the judgment was reversed.

In *Pickett* v. *Municipal Court* (1967) 249 Cal.App.2d 844 [58 Cal.Rptr. 24], a superior court judge granted a petition for writ of mandate ordering municipal court judges to allow employees of a bail bondsman to make motions to set aside bail forfeitures and to reinstate bail. The appellate court

reversed, noting that the employees, "not appearing as parties in propria persona nor as licensed attorneys-at-law, had no standing to make the motions." (*Id.*, at p. 846.) Since the insurance company that issued the bonds was a corporation, it could only appear through licensed counsel, and not through an attorney-in-fact. The judgment granting the petition for writ of mandate was reversed.

In *City of Downey* v. *Johnson* (1968) 263 Cal.App.2d 775 [69 Cal.Rptr. 830], another eminent domain case, Willie Johnson, a nonattorney, attempted to appeal from the judgment as executor of the will of Ella J. Dotsey, deceased. The court found that there was a valid notice of appeal, that Willie Johnson did not have the right to conduct the trial in a representative capacity in propria persona, and that, as a result, the judgment was invalid. (*Id.*, at p. 778.) The court cited *People* ex rel. *Dept. of Public Works* v. *Malone, supra,* 232 Cal.App.2d 531, in support of its conclusion that the judgment was invalid. The court said: "To give any effect to the judgment in this case would be a condonation of acts constituting both a crime and a possible contempt of court for we have a lay person not a member in good standing of any bar practicing law illegally, although perhaps unwittingly. We therefore feel constrained to hold the judgment invalid despite the attendant loss of the effort and time of the trial courts and their attaches." (*Downey, supra,* at p. 783.)

It may be argued that defendants should have investigated sooner and learned that their attorney was not licensed to represent them. In *Aldrich* v. *San Fernando Valley Lumber Co. supra,* 170 Cal.App.3d 725, the court considered this issue. Because of the inaction of their suspended attorney, their action was dismissed. New counsel successfully persuaded the trial court to set aside the dismissal. The appellate court held that the trial court had the inherent equitable power to set aside the judgment for extrinsic fraud and mistake. To set aside a judgment on this ground, the court held it sufficient for the client to show extreme neglect by the attorney amounting to positive misconduct which has the effect of obliterating the attorney-client relationship. However, "[w]here a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay." (*Id.*, at p. 739.)

In discussing the clients' responsibilities, the court cited a passage from *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 392 [38 Cal.Rptr. 693]. In *Daley*, plaintiff was seeking to set aside a dismissal under the discretionary two-year dismissal statute. The court stated the following principles: "A

duly employed attorney of record has exclusive charge of the proceedings on behalf of his client. [Citation.] A general doctrine charges the client with the neglect of his attorney, but gives him redress against the latter. . . . [¶] Despite the general rule which imputes the attorney's neglect to the client, there are exceptional cases in which the client, relatively free from personal neglect, will be relieved of a default or dismissal attributable to the inaction or procrastination of his counsel." (*Id.*, at p. 391.) After finding positive attorney misconduct, the court considered whether plaintiff was negligent in pursuing the lawsuit. The court said: "Clients should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers. The legal profession knows no worse headache than the client who mistrusts his attorney. The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable. . . . Since the law imposes this state of puzzled patience on the litigant, it should permit him to sit back in peace and confidence without suspicious inquiries and without incessant checking on counsel." (*Id.*, at p. 392.)

The due diligence standard applied in *Aldrich* is similar to the reasonable diligence standard applied to the client's duty to discover the wrongful act or omission of the attorney under the limitations provision of Code of Civil Procedure section 340.6. That section requires that an action against an attorney based on a wrongful act or omission, other than actual fraud, shall be commenced within one year after the plaintiff discovers, "or through the use of reasonable diligence should have discovered" the facts constituting the wrongful act or omission, or within four years if not otherwise tolled. (Code Civ. Proc., § 340.6; see generally 2 Mallen, Legal Malpractice (3d ed. 1989) §§ 18.13 to 18.15, pp. 122-142.)

Thus despite her doubts and suspicions, the failure of Mrs. Dopp to affirmatively investigate and discover earlier that her attorney was unlicensed is not fatal to her position.[12]

### PROTECTION OF THE INTEGRITY OF THE LITIGATION PROCESS

In addition to being a fraud on unknowing clients, the representation of a client by an unlicensed person in court is a fraud on the court. The policy in this situation is the protection of the integrity of the judicial process itself. If one party is represented by skilled counsel, and the other party is represented by an unlicensed person, the fraud is on the court because of the likelihood that the judicial process cannot function properly when the litigants are

---

[12]Agency principles may also be helpful in determining whether the client is bound by the acts of the attorney. (See, e.g., *Whittier Union High Sch. Dist.* v. *Superior Court* (1977) 66 Cal.App.3d 504, 510 [136 Cal.Rptr. 86].)

unequal in basic competence. For this reason, the general rule is that the proceeding is a nullity, and a judgment obtained in such a case is void and will be reversed.

Some cases hold that there is no need to reverse a judgment in such a situation when the fact that an attorney was unlicensed clearly did not affect the integrity of the litigation process. Thus, when the unlicensed attorney wins the case, the fact that he or she is unlicensed may not be grounds for relief.

The clearest example of this situation is the case of *Gomes* v. *Roney* (1979) 88 Cal.App.3d 274 [151 Cal.Rptr. 756]. In that case, defendant received a favorable verdict in a legal malpractice action. Plaintiff then filed a motion for a new trial on grounds that one of defendant's attorneys was suspended from the practice of law for nonpayment of fees. The motion for new trial was denied and plaintiff appealed, urging that the judgment was a nullity. The court rejected the contention, saying: "We have found no California case on point. In noting the problem, a commentator has pointed out that the weight of authority is that a proceeding participated in by a nonattorney acting as an attorney will be reversed as absolutely void. The reasons for this approach are predicated in public policy designed to preserve the rights of litigants from the mistakes of the ignorant and against injuries caused by the unscrupulous. [Citations.] This policy is obviously not applicable in cases where the litigant to be protected is the successful one." (*Id.*, at p. 275.)

When, as here, the unlicensed person loses the case, and the trial court comments on the poor performance of the unlicensed person, the integrity of the litigation process has been compromised. "Equity's jurisdiction to interfere with final judgments is based upon the absence of a fair, adversary trial in the original action." (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].) The fraud on the court would thus provide ample reason for voiding the judgment.

An early case raising both issues is *Connecticut Mut. L. Ins. Co.* v. *Most* (1940) 39 Cal.App.2d 634 [103 P.2d 1013]. In that case, an attorney had accepted a Judicial Council assignment to sit as a superior court judge, but he appeared in superior court as an attorney. Appellant contended that, in view of statutory and constitutional prohibitions against judges practicing law, he was ineligible to represent a party in the action. It therefore argued that the action "was instituted and prosecuted without authority, and in violation of law, and the judgment rendered is void." (*Id.*, at p. 638.) The appellate court disagreed. It found that the statutory and constitutional

violations, if any, were against the judicial office and did not affect the attorney's ability to practice law. Accordingly, respondent could be represented by the judge as an attorney. (*Id.*, at pp. 638-639.)

The *Connecticut Mutual* decision was discussed in 29 Cal.L.Rev. (1941) pages 237-240. The commentator disagreed with the decision, noting the court had not decided the issue of the validity of a proceeding in which a person not qualified to practice law has participated as an attorney. Reaching this issue, the commentator said: "The almost unanimous weight of authority holds that a proceeding participated in by a person as an attorney who was not authorized to practice law in the state is error and will be reversed upon appeal, and the great majority of cases also express the opinion that such proceeding is absolutely void and subject to collateral attack." (*Id.*, at p. 238, fn. omitted.) A number of out-of-state cases were cited in support of these statements. The commentator stated that one basis for the decisions appeared to be "that for one to practice law without authority is a type of fraud upon the court itself, which fraud is not to be tolerated. One case declared such judgments to be void because of a public policy to protect the litigants from the mistakes of the ignorant and the injuries of the unscrupulous." (*Id.*, at p. 239.) The commentator found these policy reasons unconvincing when applied to the facts of the *Connecticut Mutual* case and argued for a rule that would find a judgment rendered in such a proceeding neither void nor subject to reversal on appeal. (*Id.*, at p. 240.) The commentator pointed out that the plaintiff was not injured by having an ineligible attorney because he won the case. Thus, while the ineligible attorney should be punished, the fact of such representation should not be grounds to set aside the judgment. The commentator therefore stated: "If the basis for holding such a judgment void is the protection of the party represented, there would seem to be no sound ground upon which to declare the judgment in this case void inasmuch as the party so represented was the successful litigant." (*Ibid.*)

When as here, the party represented by the unlicensed person is the unsuccessful litigant, the policy is fully applicable. As the trial court commented, Mr. Antablin did some "incredibly foolish" things in representing defendants. A finding that the integrity of the judicial process was compromised by his incompetency would be fully justified by the record here.

### The Proceedings Were Irregular

It is well settled that misconduct of counsel may be an irregularity in the proceedings which is grounds for a new trial. (Code Civ. Proc., § 657, subd. 1; *City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 870 [135 Cal.Rptr. 647, 558 P.2d 545].)

It is undisputed that Mr. Vaughn Antablin, a nonattorney, committed a fraud on the court, the plaintiffs and the defendants in this action. The question presented is who should suffer as a result. If the judgment is overturned, the plaintiffs suffer loss of the costs of trial. If the judgment is upheld, the defendants have a million-dollar judgment entered against them after a trial in which they were represented by a nonattorney, and a marginally incompetent one at that.

If we assume that defendants were the victims of Mr. Antablin's fraud, and not coparticipants, we should find the judgment to be void. As discussed above, this result would be consistent with the general American rule. In addition, the policy considerations underlying the rule would be fully applicable. First, the result would protect defendants from representation by unlicensed persons. Second, because the errors of Mr. Antablin in not objecting to the admission of evidence undoubtedly contributed to the adverse verdict, the result would uphold the integrity of the judicial process, an integrity which was clearly compromised by the unlicensed representation here.

We therefore find that the judgment was irregular under Code of Civil Procedure section 657, subdivision 1, because it prevented defendants from having a fair trial. "[A]n overt act of the trial court, jury, or adverse party, violative of the right to a fair and impartial trial, amounting to misconduct, may be regarded as an irregularity." (*Gray* v. *Robinson* (1939) 33 Cal.App.2d 177, 182 [91 P.2d 194].) In other words, Mr. Antablin clearly acted against the best interests of his clients merely by representing them. (Cf. *Price* v. *Giles* (1987) 196 Cal.App.3d 1469, 1472-1474 [242 Cal.Rptr. 559].) We find that his misconduct was prejudicial to his clients. (*Dominguez* v. *Pantalone* (1989) 212 Cal.App.3d 201, 211 [260 Cal.Rptr. 431].)

The judgment should therefore be reversed, at least as to Mrs. Dopp, unless, as the trial court found, she was a knowing coparticipant in the fraud.

### WAIVER AND ESTOPPEL

The trial court agreed that the general rule requires reversal, but it found the rule inapplicable because it found that the doctrines of waiver and estoppel apply.

"Waiver is the intentional relinquishment of a *known right.*" (11 Witkin, Summary of Cal. Law (1990) Equity, § 178, pp. 860-861.) The trial court apparently concluded that Mrs. Dopp knew she had a right to be represented by a licensed attorney, but gave up that right in order to preserve an

argument for appeal. There is no evidence in the record to support that conclusion.

The trial court also apparently concluded that Mrs. Dopp knew her attorney was not an attorney, but chose to remain silent, thus speculating on the chance of a favorable verdict and holding the issue in reserve in the event of an unfavorable verdict. (See, e.g., *Markaway* v. *Keesling* (1963) 211 Cal.App.2d 607, 611 [27 Cal.Rptr. 583].) As *Markaway* states, a motion for a new trial on grounds of jury misconduct must be accompanied by affidavits showing that the moving party was not aware of the misconduct prior to the rendition of the verdict.

Similarly, in *Forman* v. *Alexander's Markets* (1956) 138 Cal.App.2d 671 [292 P.2d 257], another jury misconduct case, the court held that the motion for a new trial had to be supported not only by juror affidavits, but by "an affirmative showing that neither the moving party nor his counsel had knowledge of such dereliction on the part of the juror prior to the rendition of the verdict." (*Id.*, at p. 674.)

Of course, the affidavit submitted in support of the motion for new trial here met that requirement by the denial of Mrs. Dopp that she had any knowledge that her attorney was not an attorney.[13]

In addition, there was insufficient evidence to support the trial court's conclusion that Mrs. Dopp knew her attorney was not licensed, but chose to withhold the information from the trial court. Instead, the statement of Ms. James was that she notified Mrs. Dopp and the district attorney as soon as she found out that Mr. Antablin was not a licensed attorney. Significantly, notice was given *before* the jury announced its verdict. In short, we conclude that the trial court had no basis for a finding of waiver.

The same is true of estoppel. The trial court was apparently referring to the doctrine of estoppel by conduct, as defined in Evidence Code section 623. That section states: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

"Like relief from extrinsic fraud, estoppel arises in the context of the court's exercise of its equitable powers. Estoppel will be enforced to prevent a person from asserting a right where his conduct or silence makes it

---

[13]Even if Mrs. Dopp knew that Mr. Antablin was not Drew Antablin, as he purported to be, that would not be evidence that she knew that he was not an attorney.

unconscionable for him to assert it." (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 658 [267 Cal.Rptr. 218].) This is a variation on the general rule that "a party may be estopped from claiming a statutory right if untimely asserted. It is a maxim of jurisprudence that '[t]he law helps the vigilant, before those who sleep on their rights.' ([Civ. Code] § 3527.)"[14] (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1241 [1 Cal.Rptr.2d 301].) Thus, "[a]n estoppel may arise from silence where there is a duty to speak." (*Skulnick* v. *Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 891 [3 Cal.Rptr.2d 597].)

 The trial court thus apparently concluded that Mrs. Dopp knew that her attorney was not an attorney and affirmatively misled opposing counsel and the court by failing to tell them that he was not an attorney. Again, this conclusion rests on the implicit finding that Mrs. Dopp knew that Mr. Antablin was not an attorney and allowed him to represent her anyway. As discussed above, this finding is unsupported by the evidence.

In *Aldrich* v. *San Fernando Valley Lumber Co.*, *supra*, 170 Cal.App.3d 725, the court considered a situation in which a complaint was filed by an attorney who subsequently was suspended by the State Bar. The action was then dismissed as a result of a failure to respond to discovery. A motion to set aside the judgment was granted, despite the prejudice to defendants from the delay. The appellate court affirmed. It found that plaintiff had "been effectively abandoned by the positive misconduct of his attorney, who had been suspended from the practice of law, unbeknownst to him, before the order of dismissal was made and filed." (*Id.*, at p. 738.) It went on to confront "[t]he more difficult determination" of "whether plaintiff presented a satisfactory excuse for not following his case more closely and thereby not learning that his attorney had abandoned him and had been suspended." (*Ibid.*) The court found that " '[c]lients should not be forced to act as hawklike inquisitors of their own counsel . . . .' " (*Id.*, at p. 739, quoting *Daley* v. *County of Butte*, *supra*, 227 Cal.App.2d 380, 392.) It thus held that "[w]here a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay." (*Ibid.*) Finding due diligence on the part of plaintiff, the court upheld the trial court's action in vacating the order of dismissal. (170 Cal.App.3d at pp. 740-741.)

---

[14]Other maxims of jurisprudence arguably applicable here include Civil Code sections 3513 (waiver), 3517 (clean hands), 3520 (responsibility for third party act), 3524 (parties equally in right or wrong), and 3543 (innocent party's negligence).

If the declaration and testimony of Mrs. Dopp are accepted here, she clearly acted with due diligence upon learning that her attorney was not an attorney. We thus find no support for the trial court's findings of waiver and estoppel.[15]

## AGENCY

■ Plaintiffs contend that, even if the evidence is insufficient to establish the actual knowledge of Mrs. Dopp, the actual knowledge of Mr. Dopp can and should be imputed to Mrs. Dopp because he acted as her agent in the employment of Mr. Antablin. (Civ. Code, § 2295.) They thus impute knowledge that Vaughn Antablin was not Drew Antablin to Mrs. Dopp.

We reject the contention. First, there was no evidence that Mr. Dopp knew that the person appearing at trial was not an attorney. At most, he suspected that Vaughn Antablin was a different person than Drew Antablin.

Second, Mr. Dopp did not employ Mr. Antablin, Mr. Angove did. Mr. Dopp testified that Drew Antablin had handled several cases for him, and that he recommended him to Mr. Angove. Mr. Angove contacted Mr. Antablin and paid him a retainer of $2,500.

Third, Mrs. Dopp testified that she was estranged from her husband and did not make joint decisions with him. As she points out on appeal, "[i]n the case of dealings which involve a husband and wife, it is well established that an agency cannot be implied from the marriage relation alone." (*Lovetro* v. *Steers* (1965) 234 Cal.App.2d 461, 475 [44 Cal.Rptr. 604].) Nothing other than a marriage relationship, and an estranged one at that, was shown here.

Fourth, as Mrs. Dopp also points out, the trial court did not rely on imputed knowledge based on agency principles, but rather found that she had committed a fraud on the court by knowing that Mr. Antablin was not an attorney, but failing to disclose it. As we have discussed above, the evidence does not support this finding.

We therefore find no basis for imputing the alleged knowledge of Mr. Dopp to Mrs. Dopp on agency principles.

---

[15]For discussions of waiver and estoppel in the other contexts, see *Crest Catering Co.* v. *Superior Court* (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150] (waiver of privilege of nondisclosure of employment tax returns); *Alta Cal. Regional Center* v. *Fremont Indemnity Co.* (1994) 25 Cal.App.4th 455, 463-470 [30 Cal.Rptr.2d 841] (waiver of insurer's right to assert defenses to coverage); and *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 754-755 [161 Cal.Rptr. 322] (waiver by insurance company; equitable estoppel against insurer).

## DISPOSITION

The judgment is reversed as to appellant Nancy Dopp.

Dabney Acting P. J., and McDaniel, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.