Filed 8/28/25  Lee v. Kim CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBERT SANG LEE, | B341327 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 22STCV12924 |
| LORNA KIM et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rolf Michael Treu, Judge. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Robert Sang Lee, in pro. per., and Ki Hyon Kim for Plaintiff and Appellant.

Hanger, Steinberg, Shapiro & Ash, Marc S. Shapiro and Christopher G. Kerr for Defendant and Respondent Lorna Kim.

Law Offices of Jayan Hong and Jayan Hong for Defendant and Respondent Eun Zoo Lee.

Ropers Majeski and Susan J. Welde for Defendant and Respondent Leonard Lee.

_____

Plaintiff Robert Sang Lee appeals the trial court's judgment in favor of defendants Lorna Kim, Eun Zoo Lee, and Leonard Lee[1] following the imposition of terminating sanctions against Plaintiff. Plaintiff contends reversal is warranted because (i) the terminating sanctions were an abuse of discretion; and (ii) unbeknownst to Plaintiff, his attorney was ineligible to practice law at the hearing on the terminating sanctions.

We find the record is inadequate to conclude the trial court abused its discretion in granting the motion for terminating sanctions. Even if we were to consider the record provided, we would find no abuse of discretion because Plaintiff flouted the trial court's orders and other legal obligations to appear for depositions. We find Plaintiff's argument based on his attorney's ineligibility forfeited because it was never raised to the trial court. In any event, the record provided does not show error. We affirm the judgment.

## BACKGROUND

Plaintiff and his late brother, Ben Hang Lee, worked together in one or more real estate ventures. Ben suffered a debilitating stroke in 2017. Litigation involving the family and/or its assets followed. At the time of an unsuccessful consolidation motion Plaintiff filed, there were four lawsuits bearing at least some tangential relationship to this one. The only other lawsuit

---

[1] As the defendants, former and current, share common surnames, we refer to them by their first names. We intend no disrespect.

relevant here is captioned *Jong Soo Park v. Ben Hang Lee* (Super. Ct. L.A. County, No. 22STCV03583) (*Park v. Lee*). *Park v. Lee* is relevant only because of what Plaintiff claims happened during a deposition of Ben's widow, Eun, in that case.

The present case is based on claims that, beginning in April 2021, defendant Lorna (Plaintiff's niece) and her husband William spread false rumors that Plaintiff molested her as a child. Plaintiff sued Lorna and William in April 2022. Plaintiff dismissed William six months later and, by amendment to the fictitious names, added Eun, Lorna's mother, and Leonard, Lorna's brother, as defendants at the end of January 2024.

After Lorna answered Plaintiff's first amended complaint, the trial court entered a case management order in September 2022. Among other things, it set a trial date in September 2023 and reflected the parties' stipulation to mediate, with a mediator to be selected by December 2022. The initial discovery cutoff date was therefore in August 2023.

In July 2023, the parties filed a stipulation to continue the trial date. They recited that they had not complied with their earlier stipulation to schedule a mediation. They explained that this was because both sides "wish[ed] to complete important discovery before mediating." They further noted, without seeking judicial intervention, a discovery dispute: "In May 2023, the parties sought to arrange [Lorna's] deposition. However, they became involved in a dispute regarding whether [her] deposition must take place in person. This dispute is yet to be resolved. [Lorna] and her counsel are discussing a potential resolution of this matter."

The trial court continued the trial date to February 5, 2024. As a result, the discovery cutoff was extended to January 6, 2024.

In August 2023, Eun was deposed in *Park v. Lee*. The deposition was conducted over Zoom. Lorna was present in the room where Eun sat for the deposition. Plaintiff was also noted as present at that deposition. Plaintiff contends that Lorna coached Eun during the deposition, including, as the transcript shows, by passing Eun notes such as " 'don't understand.' "

Later in August 2023, Jack Karpeles substituted in as Plaintiff's attorney in this action.

Lorna noticed Plaintiff's deposition via Zoom for December 5, 2023. Plaintiff did not object but still refused to appear. Karpeles waited until late the night prior to tell Lorna's counsel that Plaintiff would not appear. His rationale was that, some weeks earlier, Leonard (not then yet a defendant) had interfered with Plaintiff's efforts to move papers out of Plaintiff's former office. According to Karpeles, this resulted in Plaintiff's records being "in shambles, if not total disarray, posing personal risk and personal danger." Karpeles also asked for dates when they could "collectively do[] back-to-back depositions for [Plaintiff], Lorna Kim, and Co-Trustee Eun Zoo Lee." Eun was not yet a defendant to this action, nor was she represented by Lorna's counsel. At no time prior to the discovery cutoff did Plaintiff ever serve a notice of deposition for Lorna.

In response to Plaintiff's failure to appear for the December 2023 deposition, Lorna filed a motion to compel Plaintiff's deposition and for monetary sanctions. The earliest date available for a hearing on the motion was April 2024. Because that date was after the scheduled trial date, Lorna also filed an ex parte application to continue the trial or have the matter heard on shortened notice.

The trial court advanced the hearing on the motion to compel and heard the matter on January 22, 2024. It directed the parties to meet and confer and continued the matter for four days. Their meet and confer efforts were unsuccessful. Although Lorna offered to be deposed via Zoom despite "never [having] received a timely notice of deposition," Plaintiff refused to sit for a deposition unless Lorna would undergo a deposition "back-to-back" on the same date. On January 26, the continued hearing date on the motion to compel (at which neither Plaintiff nor his counsel appeared), the court ordered Plaintiff to sit for a deposition within 10 days, and, by Lorna's agreement, for Lorna to sit for a deposition within the 10 days thereafter. The court denied Lorna's request for sanctions. It further continued the trial date to April 2024 to accommodate the depositions.

Following the trial court's order, Lorna noticed a deposition of Plaintiff, via Zoom, on February 6, 2024 and offered dates for her own deposition via Zoom. Plaintiff then served, on February 1, a deposition of Lorna to be taken, in person, on February 8. Plaintiff's notice also included 71 categories of document requests. On the eve of Plaintiff's scheduled February 6 deposition, Lorna objected to being deposed in person on February 8 and to Plaintiff's attempt to obtain documents through the deposition despite the passage of the discovery cutoff date. Lorna nevertheless committed to attending a Zoom deposition on February 8, if Plaintiff first sat for his February 6 deposition.

In response to Lorna's objection, on February 5, 2024, Karpeles declared "all depositions and deposition notices are in suspension until the court rules again on its [January] 26, 2024 minute order." (Boldface omitted.) Yet his e-mail did not cite any

reason why Plaintiff could not appear for his deposition; he only complained about Lorna's response to Plaintiff's deposition notice. Plaintiff did not appear for his deposition on February 6. Instead, through Karpeles, he filed an ex parte application for a further discovery hearing. The trial court denied that application on February 7, 2024.

Also on February 6, 2024, Lorna filed a motion for terminating and monetary sanctions based on Plaintiff's repeated failures to appear for deposition. She set the hearing for the date then first available—July 9, 2024. In light of the looming trial date, she filed an ex parte application to continue the trial date or have her sanctions motion considered on shortened time.

The trial court denied Lorna's ex parte application on February 8, 2024. At the same time, the court also stated it "expect[ed] counsel to comply with the court order and get the depositions completed forthwith." Lorna noticed another deposition of Plaintiff for February 20, 2024, but Plaintiff again failed to appear. Plaintiff never sat for a deposition by Lorna.

Plaintiff also failed to sit for depositions noticed by Eun and Leonard. Plaintiff served Eun and Leonard with summonses and the pleadings at the end of January 2024. Eun obtained a further continuance of the trial date to August 2024 to permit discovery by the new defendants. Eun, in turn, sent Plaintiff a notice of deposition for March 29, 2024. Plaintiff failed to appear after having complained that Eun had objected to his deposition notice and that Lorna had refused to sit for an in-person deposition. Likewise, Leonard sent Plaintiff a notice of deposition on May 16, 2024—a date pre-agreed by Plaintiff and later moved, by agreement, to the following day. Nonetheless, after complaining

about Leonard's objections to Plaintiff's discovery demands, Plaintiff refused to appear for that deposition, too.

On June 28, 2024, Plaintiff, through Karpeles, filed an opposition to Lorna's motion for sanctions against Plaintiff for failure to sit for a deposition.

On July 2, 2024, Karpeles was rendered "[n]ot eligible to practice law in CA" by the California State Bar. (<https://apps.calbar.ca.gov/attorney/Licensee/Detail/134478> [as of Aug. 5, 2025], archived at <https://perma.cc/26Z4-TP2Z>.)[2] According to the California State Bar's official website, the reason for this was "Admin Inactive/CTAPP noncompliance." (*Ibid.*) "CTAPP" refers to the State Bar's "Client Trust Account Protection Program," administrative requirements for licensees pertaining to accounts holding client funds.

In advance of the July 9, 2024 hearing on Lorna's motion for sanctions, the trial court issued a tentative ruling denying the terminating sanctions but granting monetary sanctions. However, after hearing argument from Karpeles and each defendant's counsel, the court reversed tack and granted terminating sanctions. The hearing was not reported and the record contains no settled statement of the proceedings. The

---

[2] We grant Plaintiff's unopposed request for judicial notice of Karpeles's attorney profile page on the California State Bar's official website. (See Evid. Code, § 459, subd. (a)(2), § 452, subd. (h).) We do so notwithstanding Plaintiff's failure to comply with California Rules of Court, rule 8.252(a). Not only do Defendants not oppose Plaintiff's request; they rely extensively on the information that is the subject of the request such that it would be impossible to assess either side's arguments without acknowledgement of Karpeles's July 2, 2024 inactive status.

minute order states as follows: "The Court finds that Plaintiff willfully failed to appear at his deposition at least twice following a Court Order to do so, and for reasons that are not legally supported. It does not appear, in view of Plaintiff's argument, that lesser sanctions would produce compliance. The motion for terminating sanctions is GRANTED."

Plaintiff, through Karpeles, moved for reconsideration on July 16, 2024.

The trial court entered judgment on August 2, 2024.

On September 30, 2024, Plaintiff filed, in propria persona, a notice of appeal of the judgment.

On November 22, 2024, the trial court denied the motion for reconsideration on the ground that Plaintiff's notice of appeal divested it of jurisdiction. Plaintiff appeared in propria persona at that hearing.

## DISCUSSION

### I.    Order for Terminating Sanctions

"Disobedience of a court order constitutes an abuse of discovery for which the court may dismiss the action. [Citation.] 'In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason.' [Citation.] ' "The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. . . . Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be willful." ' [Citation.] '[T]he issue before us is not what sanction we would have imposed, but whether the trial court abused its discretion in ordering dismissal as a sanction.' " (*Miranda v. 21st Century Ins. Co.* (2004)

8

117 Cal.App.4th 913, 928–929.) We cannot find an abuse of discretion here.

First, the record is inadequate to conclude the trial court abused its discretion because it does not include a reporter's transcript of the hearing on Lorna's motion. " '[I]t is the appellant's burden to provide a reporter's transcript if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ." . . . .' Although in certain instances a reporter's transcript may not be necessary, including if an appeal involves a legal issue requiring de novo review, on issues such as the instant one involving the abuse of discretion standard of review, a reporter's transcript or an agreed or settled statement of the proceedings is indispensable." (*Hood v. Gonzales* (2019) 43 Cal.App.5th 57, 79–80, citations omitted.)

The reason for this is clear: "In the absence of a transcript the reviewing court will have no way of knowing in many cases what grounds were advanced, what arguments were made and what facts may have been admitted, mutually assumed or judicially noticed at the hearing. In such a case, no abuse of discretion can be found except on the basis of speculation." (*Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148, 156–157.) Such speculation would contravene the rule that " ' "[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent." ' " (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

The necessity of a transcript to permit review in this case is manifest. The trial court made the finding that lesser sanctions would not procure compliance based explicitly on "Plaintiff's

argument," presumably one made at the hearing because the tentative had been in Plaintiff's favor.

Second, even if we were to ignore our obligation to presume the missing transcript would have contained all matter necessary to support the judgment, we would still find no abuse of discretion. Although " 'a terminating sanction should generally not be imposed until the court has attempted less severe alternatives and found them to be unsuccessful and/or the record clearly shows lesser sanctions would be ineffective,' " courts nevertheless have " 'authority to order terminating sanctions as a first measure' " in " 'extreme cases.' " (*J.W. v. Watchtower Bible & Tract Society of New York, Inc*. (2018) 29 Cal.App.5th 1142, 1169.) "[T]here is no question of the power of the court to apply the ultimate sanction of default against a litigant who persists in an outright refusal to comply with his discovery obligations." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787.)

We think the trial court acted within the bounds of reason in issuing terminating sanctions in this case. Before Lorna brought her sanctions motion, Plaintiff twice refused to appear for depositions both before and after being ordered to do so. He also failed to formally object to Lorna's deposition notices, waiting to the last minute to assert explanations casting blame on third parties or seeking to take various depositions together, and bearing little or no relation to his ability to appear. Those issues he did raise in his meet and confer e-mails and in his opposition to the motion for sanctions relating to the terms of a deposition *of* Lorna may have furnished grounds for court intervention with respect to *Lorna's* deposition, but he never sought an order compelling those conditions. At best, he filed an ex parte application for a further discovery hearing (after being a

10

no-show at the last one held just days prior) merely alluding to the issue.

To be clear, Plaintiff's failure to appear for deposition was not justified by the opposing party's failure to respond in his preferred way to a deposition notice. To the extent Plaintiff had a bona fide objection to Lorna's wish to appear remotely for her deposition, or to any other issue with Lorna's response to deposition subpoenas, the onus was on him to move to compel, not refuse to cooperate with otherwise valid—and court-ordered—discovery. Simply refusing to appear, without simultaneously moving the court for an order on one's own discovery, constitutes the precise kind of failure to cooperate that invites sanctions.

In response to Plaintiff's repeated failures to appear, on February 6, 2024, Lorna brought her sanctions motion and related request to have it heard sooner or continue the trial date. In considering the scheduling matters on an expedited basis two days later,[3] the court reiterated its expectation that Plaintiff would comply with its prior order to undergo a deposition and that he would do so "forthwith."

Not only did Plaintiff thereafter refuse to appear when Lorna noticed (for a third time) his deposition, but he also refused to sit for depositions by Eun and Leonard. All told, by the time of

---

[3]     Plaintiff incorrectly asserts that the trial court denied the underlying terminating sanctions motion on February 8, 2024. The court considered only the scheduling issues and decided not to advance the hearing on the substantive motion from its scheduled July 9, 2024 hearing date.

11

the hearing Plaintiff had failed to appear without valid excuse for at least five depositions and attended zero.

We reject Plaintiff's argument that the trial court improperly considered evidence of his noncompliance after the motion was filed because the evidence was not presented until Lorna's reply. A court considering sanctions is entitled to look to the totality of the circumstances. (*Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702.) Certainly, the trial court was just as justified in considering Plaintiff's continued noncompliance with discovery obligations as it would have been in considering evidence that Plaintiff had complied.

Plaintiff's conduct, including ignoring trial court orders and engaging in consistently disingenuous meet and confer communications, reflected a staunch unwillingness to comply with court orders or discovery obligations. It is reasonable to infer Plaintiff's conduct was willful and a lesser sanction would not have prompted a change in attitude.[4]

## II.  Karpeles's Suspension

For the first time on appeal, Plaintiff argues the judgment is a "nullified result" because Karpeles was ineligible to practice on the date of the hearing on Lorna's sanctions motion, and neither Plaintiff nor the trial court had notice of this fact. In

---

[4]  Plaintiff's post-hearing e-mail to counsel offering Plaintiff's deposition on 48 hours' notice within the next 10 days was not before the trial court. In any event, it tellingly continues to subject Plaintiff's availability for deposition to reciprocation of unilaterally imposed conditions (e.g., in person, with document production) that the trial court found "not legally supported."

12

support, Plaintiff relies primarily on Code of Civil Procedure[5] section 286 and *Russell v. Dopp* (1995) 36 Cal.App.4th 765, 775, 777–778 (*Russell*). Plaintiff forfeited his argument by failing to raise it in the trial court.

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal.' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.) One exception to this rule is where the appellant challenges the trial court's subject matter, or fundamental, jurisdiction. (*Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 143–144.) We read Plaintiff's argument—including citation to *Russell*, *supra*, 36 Cal.App.4th at page 778, that the "general rule" is a judgment obtained against a person represented by an unlicensed attorney is "void"—as seeking the benefit of this exception. We do so because "[a] judgment is void if the trial court lacks jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction, lacked personal jurisdiction over the defendant, or granted relief the court had no power to grant." (*W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 13.) In contrast, "[i]f the court has fundamental jurisdiction but exceeds its jurisdiction by acting

---

[5] Undesignated statutory references are to the Code of Civil Procedure.

Section 286 provides: "When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney, or to appear in person."

contrary to its statutory duties, the judgment is merely voidable, not void." (*Ibid.*)

Here, there is no dispute that the trial court had jurisdiction over the subject matter of the suit and the parties. The only question is whether the trial court lost that jurisdiction when Karpeles was rendered "ineligible" to practice law for failing to comply with CTAPP requirements but nevertheless represented plaintiff at the hearing on Lorna's sanctions motion. As a matter of law, it did not.

"A lack of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." [Citation.] When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction.' " (*People v. Lara* (2010) 48 Cal.4th 216, 224–225 (*Lara*).) " '[F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio*." (*Id.* at p. 225.) " 'In contrast, an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time.' " (*Ibid.*)

Accepting for the sake of argument that Plaintiff was entitled to notice under section 286 before the trial court entered judgment (even though there is no evidence defendants had knowledge of the facts giving rise to the notice obligation), entry

14

of judgment was an " 'act without the occurrence of [this] procedural prerequisite[],' " i.e., an act " 'in *excess* of jurisdiction' " (*Lara, supra*, 48 Cal.4th at pp. 224–225), not an act in a matter where fundamental jurisdiction was absent. Plaintiff's challenge is therefore not to the trial court's fundamental jurisdiction to enter the judgment.

*Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 730 (*Aldrich*), cited by Plaintiff, states that a judgment entered in violation of section 286 is "void." A closer reading of *Aldrich* shows that the word "voidable" was intended. The *Aldrich* court concluded that the dismissal order in that case was "void" because the trial court "act[ed] in excess of its authority," not without authority. (*Id.* at p. 743.) Moreover, the court acknowledged that a party can waive the protections of section 286. (*Aldrich, supra*, at p. 742.) Indeed, courts uniformly hold that the notice provisions of section 286 may be waived. (*California Water Service Co. v. Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 736; see also *Gion v. Stroud* (1961) 191 Cal.App.2d 277, 280; *Raps v. Raps* (1942) 20 Cal.2d 382, 386.) That section 286 notice is waivable is incompatible with the idea that section 286 can suspend a trial court's fundamental jurisdiction because " '[f]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent.' " (*Lara, supra*, 48 Cal.4th at p. 225.)

The necessity of first raising this issue in the trial court is underscored by the need for additional facts to support Plaintiff's position. Plaintiff cites two cases, *Russell* and *Aldrich* that address the validity of a judgment against a party whose putative counsel in the proceedings was unlicensed. In each case, it was not enough to set aside judgment that the counsel was unlicensed

15

or a section 286 notice had not been given. Rather, the courts performed extensive factual analyses before reaching their conclusions. And, importantly, in each case there was a direct causal link between the putative attorney's unlicensed status and the adverse outcome for the client. (See *Russell*, *supra*, 36 Cal.App.4th at pp. 778, 780 [trial court "comment[ed] on the poor performance of the unlicensed person," whose failure to object to evidence "undoubtedly contributed to the adverse verdict"]; *Aldrich*, *supra*, 170 Cal.App.3d at pp. 735–736, 739 [the appellant was the victim of attorney's "positive misconduct" by "total[ly] fail[ing] . . . to represent his client" after he was suspended, resulting in discovery defaults and, ultimately, a terminating sanction].) Put another way, in each case the client was prejudiced by the lack of licensure.

Here, the undeveloped record is insufficient to compel reversal. Crucially, there is no evidence of a causal link between Karpeles's ineligibility to practice and the outcome of the hearing on Lorna's motion for terminating sanctions.[6] Rather, the record shows only that Karpeles appeared at the hearing shortly after he was rendered ineligible for administrative reasons relating to the State Bar's CTAPP.

In *People v. Ngo* (1996) 14 Cal.4th 30, our Supreme Court considered a similar fact pattern but in the criminal context where the right to competent licensed counsel is constitutionally

---

[6]    We refer only to this event and not subsequent events involving the ineligible Karpeles—particularly the motion for reconsideration he filed—because Plaintiff, in propria persona, mooted the motion for reconsideration Karpeles filed by filing a notice of appeal.

16

guaranteed. (*Id.* at p. 32; see also Cal. Const., art. I, § 15.) There, the defendant had been represented by licensed counsel through trial but, at the time of his sentencing hearing, counsel was placed on inactive status to noncompliance with mandatory continuing legal education (MCLE) requirements. (*Ngo, supra,* at p. 32.) The trial court rejected the defendant's attempts to withdraw his plea and obtain new counsel, accepted the plea, and sentenced the defendant to prison. (*Id.* at p. 33.) The Court of Appeal reversed the defendant's conviction "without examining the quality of counsel's representation or inquiring whether prejudice resulted from counsel's inactive status." (*Id.* at p. 32.) The Supreme Court concluded this was error. (*Ibid.*) After examining the history and purpose of the MCLE requirement, the administrative consequence of noncompliance, and the ease with which an attorney may regain eligibility through compliance, the court acknowledged that "although MCLE requirements clearly do *relate* to professional competence, in the sense they are intended to enhance the competence of attorneys practicing law in this state, the inference is unwarranted that any and all noncompliance with those requirements necessarily establishes an attorney's professional incompetence or constitutionally deficient performance in representation following enrollment on inactive status." (*Id.* at p. 36.)

In short, an attorney's ineligibility to practice is not per se evidence of his incompetence and more must be shown before such ineligibility will taint a judgment against his client. Therefore, the bare fact of Karpales's inactive status for CTAPP noncompliance when he appeared at the hearing on the motion for terminating sanctions is an insufficient basis on which to invalidate the judgment.

17

## DISPOSITION

The judgment is affirmed. Defendants to recover their costs on appeal.

RICHARDSON, J.

WE CONCUR:

CHAVEZ, Acting P. J.

GOORVITCH, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.