[No. B007068. Second Dist., Div. Three. July 29, 1985.]

DELBERT ALDRICH, Plaintiff and Respondent, v.
SAN FERNANDO VALLEY LUMBER CO., INC., et al.,
Defendants and Appellants.

**COUNSEL**

Roper & Folino, James L. Roper and Joseph L. Stark for Defendants and Appellants.

Thomas E. Rubbert for Plaintiff and Respondent.

OPINION

**DANIELSON, J.**—Defendants and appellants San Fernando Valley Lumber Co., Inc., and Martin F. Escarrega appeal from an order of the superior court made after judgment on July 13, 1984, vacating and setting aside its previous order of dismissal filed on August 7, 1981, dismissing the action of plaintiff and respondent Delbert Aldrich for failure to answer interrogatories. (Code Civ. Proc., §§ 2030 and 2034, subd. (d).)[1] We affirm the order appealed from.

FACTUAL AND PROCEDURAL BACKGROUND

Two issues are presented by this appeal: (1) whether the trial court abused its discretion, and thereby erred, in granting respondent's motion to vacate the court's order of dismissal filed August 10, 1981, and (2) whether that order of dismissal was in excess of the court's power then to act, under section 286, and, therefore, void. The trial court's decision was based on the following facts and procedures.

On December 19, 1978, plaintiff and respondent Aldrich, a dentist, was injured in an automobile accident. Joseph Agapay, a lawyer, referred him to Robert P. Brotman, and on June 8, 1979, Aldrich retained Brotman as his attorney. Brotman filed an unverified complaint on his behalf on December 17, 1979, and, on September 8, 1980, filed an unverified first amended complaint and had summons issued on it.[2]

On October 30, 1980, appellants served and filed an answer to the first amended complaint, a demand for jury trial, and a request for nature of damages. At the same time, appellants served written interrogatories, directed to the respondent, on respondent's attorney of record. No response was received from that service and on January 26, 1981, appellants' attorney directed a letter to respondent's attorney, Brotman, notifying him that they had not yet received answers to the interrogatories, granting an extension of 20 days in which to answer the interrogatories, and notifying him that if answers were not received by that time they would proceed accordingly. There was no response to the letter, and on May 5, 1981, appellants'

---

[1]All statutory references will be to the Code of Civil Procedure unless otherwise indicated.

[2]In accordance with California Rules of Court, rule 12(a), we have ordered the entire superior court file transmitted to us to augment the record on appeal.

counsel served and filed a motion to dismiss respondent's complaint for failure to answer the interrogatories. That motion was heard on May 29, 1981, and the court made an order that respondent was to answer all interrogatories without objection within 15 days after notice of the order and to pay $250 to the appellants as the reasonable cost of making the motion. Notice of that ruling was served by mail by appellants' attorney upon respondent's attorney, Brotman, on June 1, 1981.

Again there was no answer to the interrogatories and no other response to the court's order of May 29, 1981, and, on June 24, 1981, counsel for appellants served by mail upon Brotman, and on July 1, 1981 filed, a motion to dismiss respondent's complaint for failure to answer interrogatories. That motion was heard on August 7, 1981, and the court granted the motion to dismiss under sections 2030 and 2034, and signed and filed an order of dismissal. On August 10, 1981, the clerk served notice of filing of the order of dismissal on the parties, by mail addressed to their attorneys of record.

The original superior court file contains the signed original of the clerk's notice, bearing the clerk's filing stamp dated August 10, 1981. A photocopy of the same appears in the clerk's transcript at page 41. The original superior court file also contains an unsigned yellow copy of the clerk's notice, which is creased as if by folding to fit into a business envelope, and an envelope postmarked "August 10, 1981," bearing the printed return address:

"After 5 Days Return to
"COUNTY CLERK
"600 East Broadway
"Glendale, California 91205"

to which has been affixed a yellow label bearing the words and figures:

"BRO*01 471521N1 08/15/81

"RETURN TO SENDER
"NOT DELIVERABLE AS ADDRESSED
"UNABLE TO FORWARD"

which appears to be a label of the Postal Service. That envelope also bears, in handwriting, an arrow drawn across the address window, pointing to the printed return address, and the superior court file number of the case. A photocopy of the envelope appears in the clerk's transcript at page 43A.

On August 11, 1981, counsel for appellants served by mail on counsel for respondent, Brotman, a notice of the above ruling, which was filed on

August 18, 1981. That notice recited, in part, that the court had ruled "[a]fter duly considering the moving party's documents and having received no opposition nor there being any appearance on behalf of plaintiff . . . ."

On April 6, 1984, respondent, represented by a different attorney, A. J. Calabro, served and filed a motion to set aside the judgment of dismissal and calendared the same for hearing on May 11, 1984. The motion was made on the grounds that respondent had a meritorious case, that the judgment had been obtained by appellants by mistake which prevented respondent from presenting the case to the court, and that on the date the action was dismissed and the judgment entered, August 7, 1981, respondent had no attorney of record by reason of the fact that Robert P. Brotman had been suspended from the practice of law by the Supreme Court of California on July 6, 1981.

The motion was supported by declarations of respondent and of Calabro. The declaration of respondent averred that he had received no notice of the above-described interrogatories and motions; that unknown to him his attorney had been suspended from the practice of law by the Supreme Court and that he had never been informed of that fact, that until he had examined the court's file with Mr. Calabro, on March 16, 1984, he had never been informed or had any reason to believe that any action had been taken to dismiss his complaint, and that the interests of justice require that he be allowed to pursue his cause of action.

The declaration of A. J. Calabro stated that he was an attorney; that on March 12, 1984, respondent had asked him to locate respondent's attorney, Brotman; that he had made several unsuccessful attempts to locate Brotman; that on March 16, 1984, he and respondent had examined the court's file in respondent's case and learned that the case had been dismissed on August 7, 1981, for failure to answer interrogatories; that he then contacted the State Bar and learned that Brotman had been suspended from the practice of law on July 6, 1981, by the Supreme Court and he attached to his declaration a certificate of the State Bar to that effect; that he had discussed the merits of respondent's action with respondent and was of the opinion that it was a good and meritorious claim and that the interests of justice require that respondent be allowed to present his claim in court.

The memorandum of points and authorities in support of the motion cited only one authority, section 286.

Appellants filed a memorandum of points and authorities in opposition to respondent's motion, supported by the declaration of Philip J. Donavan, an associate in the law office of appellants' attorneys. That declaration recited

many of the procedural events set forth above and declared that until the receipt of respondent's pending motion he was unaware, and had no notice, that Brotman had been suspended from the practice of law. The declaration also averred that if the action were permitted to resume it would be impossible properly to prepare for trial within the [five-year] time constraints of [former] section 583, subdivision (b) [now section 583.310]; and that it would likely be difficult to locate witnesses to the predicate accident.

On May 11, 1984, respondent's motion to set aside the judgment of dismissal came on for hearing and, on the court's own motion and request of the moving party, the matter was continued until June 1, 1984, ". . . so that further Declarations in Support of the Motion may be filed . . . ." The record contains no reporter's transcript of that proceedings. A notice of that ruling and order, served and filed by the appellants, states that during the hearing of May 11, 1984, the court had ". . . ruled that Section CCP 286 was inapplicable insofar as . . ." the motion to set aside judgment of dismissal was concerned. That notice also stated that the court had ordered that respondent's attorneys submit appropriate declarations explaining why respondent had not contacted his original attorney, Robert P. Brotman, or any other attorney concerning the status of the case prior to the time that respondent had contacted the law firm of Mr. Calabro.

The declaration of Christine Aldrich and a supplemental declaration of respondent were thereafter filed.

The declaration of Christine Aldrich, wife and business manager of respondent, establishes that she had accompanied the respondent to his first interview with Brotman in about June of 1979, at which time Brotman told them that it would take approximately four to five years for their case to come to trial. Their next contact with Brotman was at about the time he filed the complaint and amended complaint. We note that the two documents were filed on December 17, 1979, and September 8, 1980, respectively, about nine months apart. Christine Aldrich also, at the request of respondent, tried to reach Brotman by telephone in March of 1981, and was told by a person who identified herself as Brotman's secretary that he was not in but would call back. He did not call back.

Later, in 1981, she called Brotman's office again and the lady who said she was Brotman's secretary told her that nothing was set up on the case yet, but that Brotman would contact her when there were some developments. In the latter part of 1981, she tried again to reach Brotman at the same telephone number. The people who answered said that this was not the correct number for Brotman, they did not know who he was, and they had no information as to how he could be reached. She then tried to obtain

more accurate information from the telephone company but they could not help her locate Mr. Brotman.

She then called Joseph Agapay, the lawyer who had recommended respondent to Brotman, and told Agapay of their inability to reach Brotman. Agapay indicated that he would do what he could and would then get back to her. Two or three weeks later, he called and said that he had the same phone number and address that they had for Brotman but that he was unable to locate him, but would continue to try to find Brotman.

In March or April of 1982, Christine Aldrich again tried to reach Brotman at the same telephone number and the lady who answered said that the telephone was for a residence and that Brotman was not there but that she could take a message for him. Christine Aldrich left word for Brotman to contact them.

In July or August of 1982, Christine Aldrich again called Agapay who told her that he, too, had been unable to locate Brotman and suggested that they try the Beverly Hills information number and also that he believed they were having trouble reaching Brotman because he was moving his office. She then called the information operator for a telephone number for Brotman but none was listed.

Christine Aldrich also declared that in the calendar year 1983, the respondent was having serious problems with his injuries and no efforts were made to find Brotman other than calling information for a telephone number.

On March 12, 1984, at the request of respondent, Christine Aldrich called another attorney, A. J. Calabro, explained that they were concerned because they were nearing the five-year period Brotman had referred to, and asked his assistance in finding Mr. Brotman.

The supplemental declaration of respondent Delbert Aldrich corroborated the declaration of Christine and stated that during the years that the lawsuit had been pending he had been in extreme pain, undergoing various forms of medical treatment, that he believed he was permanently disabled, had been ". . . told to lift nothing heavier than a fork, . . ." that he will have unrelenting pain the rest of his life, can no longer engage in physical activities, will always suffer from dizziness and have a hearing impairment and decreased visual acuity, that he was in a coma part of the time, had heard medical attendants state that he was ". . . slipping away fast . . ." and that that experience caused him anxiety, depression, and made him somewhat suicidal. He had incurred medical expenses in excess of $125,000. He de-

clared that he believed that he had exercised due diligence under the circumstances.

The second and continued hearing of the motion of the respondent to set aside judgment was held on June 1, 1984. The motion was granted and the order of dismissal filed August 7, 1981, was vacated and set aside on the condition that the respondent first pay to the appellants the sum of $1,000 in costs. That, apparently, was done on or before July 13, 1984, at which time the court also granted respondent's motion to set the case for early trial. Notice of appeal was filed on July 26, 1984.

## DISCUSSION

In his motion to set aside the judgment respondent sought relief upon two bases: (1) the inherent equity powers of the court so to act, i.e., (a) that he had a meritorious case, (b) that the judgment was obtained by [extrinsic] mistake which (c) prevented him from presenting his case to the court; and (2) at the time his action was dismissed by the court and judgment entered he had no attorney of record by reason of the fact that, unknown to him, his original attorney, Brotman, had been suspended from the practice of law by the Supreme Court of California and respondent had not been notified by the adverse party to appoint another attorney or to appear in person, as required by section 286.

### I

### *Vacation of the Judgment Under the Court's Inherent Powers*

*The Trial Court's Order Vacating the Order of Dismissal Was Based Upon the Court's Inherent Equitable Power and Not Upon the Statutory Remedy of Section 473*

Appellants urge in their briefs that the trial court did not have legal jurisdiction, under section 473, to vacate and set aside its order of dismissal which had been filed more than two years and nine months earlier, on August 7, 1981.[3] That argument is correct but it is not relevant to the issue before us in this appeal and, therefore, is without

---

[3]The six-month time limit for granting relief under section 473 is jurisdictional and relief cannot be granted under section 473 if the application for such relief is instituted more than six months after the entry of the judgment, order or proceeding from which relief is sought. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700]; *Thompson* v. *Vallembois* (1963) 216 Cal.App.2d 21, 24 [30 Cal.Rptr. 796]; *Stevenson* v. *Turner* (1979) 94 Cal.App.3d 315, 318 [156 Cal.Rptr. 499].)

merit. The order appealed from was not based upon the court's statutory power under section 473, it was based upon the trial court's inherent equity power to vacate a judgment obtained under circumstances of extrinsic fraud or mistake.

Although the relief granted by the trial court in the case at bench is neither authorized nor governed by section 473 we note that section 473 empowers courts to grant its relief ". . . upon such terms as may be just . . .," thereby authorizing the courts to exercise their equitable powers in considering applications for relief under that section.

Thus the reasoning of appellate courts in determining causes based on section 473 may be considered, where germane, in determining causes addressed to the court's inherent equity power to vacate or set aside a judgment or order entered because of extrinsic fraud or mistake.

*A Motion to Set Aside or Vacate an Order of Dismissal for Failure to Comply With an Order to Answer Interrogatories Is Addressed to the Sound Discretion of the Trial Court*

The order of dismissal for failure to comply with an order compelling answers to interrogatories, signed by the court and filed in the case at bench, is a judgment. Section 581d provides that a written dismissal of an action, signed by the court and filed in the action, constitutes a judgment and is effective for all purposes.

It is apparent that an order of dismissal entered for failure to comply with an order compelling answers to interrogatories is the practical equivalent of a default judgment.

█ In *Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, in which our Supreme Court affirmed an order in which the trial court exercised its inherent equity power to grant relief from a default judgment entered due to extrinsic mistake, the court said, at page 854: "A motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order."

In *Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892 [187 Cal.Rptr. 592, 654 P.2d 775], an appeal from orders under section 473 vacating and setting aside a judgment of dismissal, the court repeated, at pages 897-898, the well established rule that relief under section 473 " " ". . . is addressed to the sound discretion of the trial court and in the

absence of a clear showing of abuse thereof the exercise of that discretion will not be disturbed on appeal." ' [Citations.]"

The court went on to say, at page 898: "That discretion, . . . ' "is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593]; *Bailey* v. *Taaffe* (1866) 29 Cal. 423, 424.)"

*Courts May, in Their Sound Discretion, and in the Exercise of Their Inherent Equitable Powers, Vacate or Set Aside Judgments or Orders Entered Because of Extrinsic Fraud or Mistake*

██ It is the policy of the law to favor a hearing on the merits whenever possible, and the appellate courts are much more disposed to affirm an order which compels a trial on the merits than to allow a default judgment to stand. This policy disapproves a party who "attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." (*Weitz* v. *Yankosky, supra,* 63 Cal.2d 855; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 352 [66 Cal.Rptr. 240].)

Where, as in the case at bench, the motion is made more than six months after entry of default, the motion is not directed to the court's statutory power under section 473 to grant relief for mistake or excusable neglect but rather is directed to the court's inherent equity power under which it may grant relief from a default judgment where there has been extrinsic fraud or mistake. (*Weitz* v. *Yankosky, supra,* 63 Cal.2d at pp. 854-855; *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 352.)

██ As the court stated in *In re Marriage of Guardino* (1979) 95 Cal.App.3d 77 at page 88 [156 Cal.Rptr. 883]: "[A] judgment is not entitled to the usual conclusive effect and equitable relief is allowed long after the time for appeal, new trial or other statutory means of review has expired if the judgment was obtained under circumstances of fraud or mistake which prevent a fair adversary hearing, and the aggrieved party does not have a reasonable opportunity to litigate his claim or defense. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 175, pp. 3744-3745.)"

██ " '. . . The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law.' " (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].)

■ In this context the terms "fraud" and "mistake" have been given a broad meaning by the courts, and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. (See *In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882].) The term "extrinsic" refers to matters outside of the issues framed by the pleadings, or the issues adjudicated. (See *Olivera* v. *Grace, supra,* 19 Cal.2d at p. 575.)

In the case at bench, the grounds for such equitable relief would be extrinsic mistake, rather than extrinsic fraud. ■ Mistake has been defined as " '. . . the doing of an act under an erroneous conviction, which act, but for such conviction, would not have been done.' " (*Salazar* v. *Steelman* (1937) 22 Cal.App.2d 402, 409 [71 P.2d 79].) The same reasoning logically applies to a failure to act,—an omission.

■ In *Stiles* v. *Wallis* (1983) 147 Cal.App.3d 1143, 1147-1148 [195 Cal.Rptr. 377], the court ruled that three elements must be satisfied to set aside a judgment based upon extrinsic mistake: first the defaulted party must show that it has a meritorious case; secondly it must articulate a satisfactory excuse for not presenting a defense to the original action; and lastly it must demonstrate that it was diligent in seeking to set aside the default once it had been discovered. This rule applies equally where the motion is to vacate an order of dismissal.

■ In the case at bench, respondent filed declarations in support of his motion which were sufficient to establish that he had a meritorious case. Further, respondent adequately explained why he had made no opposition to the motion to dismiss, i.e., he did not know of it, and he had been effectively abandoned by the positive misconduct of his attorney, who had been suspended from the practice of law, unbeknownst to him, before the order of dismissal was made and filed. The more difficult determination to be made is whether plaintiff presented a satisfactory excuse for not following his case more closely and thereby not learning that his attorney had abandoned him and had been suspended.

■ Generally, in motions under section 473, or under the inherent equity power of the court, the plaintiff must plead that the neglect or omission of his attorney was excusable, because inexcusable neglect is ordinarily imputed to the client, and his redress is an action for malpractice. However, in a case where the client is relatively free from negligence, and the attorney's neglect is of an extreme degree amounting to positive misconduct, the attorney's conduct is said to obliterate the existence of the attorney-client relationship. (See *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353; *Carroll* v. *Abbott Laboratories, Inc., supra,* 32

Cal.3d at p. 898.) The client in such a case has representation only in a nominal and technical sense. (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 392 [38 Cal.Rptr. 693].)

As Justice Friedman so aptly and clearly stated, in *Daley* v. *County of Butte, supra,* 227 Cal.App.2d at page 392: "Clients should not be forced to act as hawklike inquisitors of their own counsel, suspicious of every step and quick to switch lawyers. The legal profession knows no worse headache than the client who mistrusts his attorney. The lay litigant enters a temple of mysteries whose ceremonies are dark, complex and unfathomable. Pre-trial procedures are the cabalistic rituals of the lawyers and judges who serve as priests and high priests. The layman knows nothing of their tactical significance. He knows only that his case remains in limbo while the priests and high priests chant their lengthy and arcane pretrial rites. He does know this much: that several years frequently elapse between the commencement and trial of lawsuits. Since the law imposes this state of puzzled patience on the litigant, it should permit him to sit back in peace and confidence without suspicious inquiries and without incessant checking on counsel."

Where a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay. (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353.)

Positive misconduct is found where there is a total failure on the part of counsel to represent his client. (See *Carroll* v. *Abbott Laboratories, Inc., supra,* 32 Cal.3d at p. 900.)

In the case at bench, the record discloses no activity by, and no presence whatever of the attorney, Brotman, after he filed the amended complaint. There is no evidence of his existence thereafter. He did nothing further on the case and his right to practice law was suspended on July 6, 1981, prior to entry of the order of dismissal. His dereliction of professional duties constituted actual misconduct and his client was not even nominally represented.

It is clear in this case that the positive misconduct necessary to absolve a client of responsibility for his attorney's inexcusable negligence is present.

The client's own negligence in following up and pursuing his case is also scrutinized, even in cases of positive misconduct on the part of the attorney. (See *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 355.) It is undeniable in the case at bench that plaintiff did not assiduously seek

out his attorney. But, as has been pointed out, a client should not be required to act as a "hawklike inquisitor" of his own counsel, nor perform incessant checking on counsel. (*Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 392.)

Moreover, it has been held that where the aggrieved party makes a strong showing of diligence in seeking relief after discovery of the facts, and the other party is unable to show prejudice from the delay, the original negligence in allowing the default to be taken will be excused on a weak showing. (See *Turner* v. *Allen* (1961) 189 Cal.App.2d 753, 759 [11 Cal.Rptr. 630]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 194 at p. 3765.)

Accordingly, the next question is whether the client demonstrated sufficient diligence in seeking relief upon discovery of his attorney's improper conduct. In the case at bench, respondent learned on March 16, 1984, that his case had been dismissed and, on April 6, 1984, with a different attorney, he filed his motion to vacate the order of dismissal. This period of 21 days cannot be considered unreasonable. (See *Orange Empire Nat. Bank.* v. *Kirk, supra,* 259 Cal.App.2d at p. 355, where almost six months elapsed from the time of discovery of the judgment and the filing of the motion to vacate.)

The final issue is whether defendant suffered prejudice from the delay. Prejudice is one of the factors the trial court may properly consider in determining whether the moving party acted diligently. (See *Weitz* v. *Yankosky, supra,* 63 Cal.2d at p. 857.) Although it might be said that there is some prejudice inherent in any protracted delay, appellants' single declaration in opposition to respondent's motion did not set forth substantial evidence of missing witnesses, evidence destroyed, and the like, to establish prejudice.

### *The Trial Court Exercised Sound Judicial Discretion*

A review of the clerk's and reporter's transcripts, establishes that the trial court acted judiciously and with great care in making its decision on the motion to set aside judgment. When the matter was first before the court the judge continued it for three weeks in order to obtain further declarations in support of the motion. The reporter's transcript reflects that the court had done considerable research and study before the date of the second hearing, when the order vacating judgment was made and filed. The court's actions and decision fully comport with the standards for sound judicial discretion set forth in the opinions of our Supreme Court.

In light of the positive misconduct and abandonment of his client by respondent's counsel, the promptness with which respondent moved for relief

upon discovery of the dismissal, and the lack of showing of prejudice, plaintiff's showing of diligence is sufficient. We find that the trial court did not abuse its discretion and did not err in vacating the order of dismissal.

## II

### Vacation of the Judgment Under
### Code of Civil Procedure Section 286

Although it appears that the court made its order vacating and setting aside its previous order of dismissal by the exercise of its inherent equity powers, as reviewed above, the respondent had based his motion for the order to vacate on the additional ground of a violation of section 286, the only authority he cited.

Section 286 provides as follows: "When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney, or to appear in person."

In the case at bench it is uncontroverted that, unknown to respondent, his former counsel, Brotman, had been suspended from the practice of law by our Supreme Court on July 6, 1981, 32 days before appellants' motion to dismiss was heard and the order of dismissal signed and filed.

When an attorney is suspended from the practice of law, his authority to act as an attorney ceases, and he is no longer authorized to represent a party in litigation. (Bus. & Prof. Code, § 6117; *Antonsen* v. *Pacific Container Co.* (1941) 48 Cal.App.2d 535, 539 [120 P.2d 148]; *Lovato* v. *Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 553 [198 Cal.Rptr. 838]; 64 Ops.Cal.Atty.Gen. 42, 46 (1981).)

It is also uncontroverted that at the time the trial court heard appellants' motion to dismiss and made and filed the order of dismissal, on August 7, 1981, appellants had not given respondent ". . . written notice, to appoint another attorney, or to appear in person," as required by section 286, and that respondent had not appointed another attorney and had not appeared in person in the action. Respondent had no attorney of record in the action, after July 6, 1981, until he appeared by a different attorney, Mr. Calabro, on April 6, 1984.

Section 286 was enacted in 1872, and has been a part of our Code of Civil Procedure ever since. It was amended once, in 1880, to change only the punctuation.

 The purpose of section 286 is to provide notice to a party who might otherwise be taken unaware. (*California Water Service Co.* v. *Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 736 [37 Cal.Rptr. 1].) The language of the statute is so plain in this regard that no other intent can be attributed to the Legislature.

Section 286 means what it plainly says, ". . . that no *proceedings* may be had against him, [the now unrepresented party] no judgment or order or other step in the action taken, until he appoints an attorney, unless the prescribed notice be first given." (*Larkin* v. *Superior Court* (1916) 171 Cal. 719, 724 [154 P. 841]; italics in original.)

The term "proceedings," used in its technical legal sense, refers to something done or to be done in a court of justice or before a judicial officer. (*Lister* v. *Superior Court* (1979) 98 Cal.App.3d 64, 70 [159 Cal.Rptr. 280].)

A motion in the superior court to dismiss an action for want of prosecution is "[a] good illustration of what is meant by the term 'proceedings.' " (*Larkin* v. *Superior Court, supra,* 171 Cal. 719, 724.) We hold that a motion to dismiss an action for failure to answer interrogatories, such as appellants' motion in the case at bench, is a "proceeding" within the meaning of section 286.

Where a party is without an attorney in a civil action, by reason of the circumstances set forth in section 286, ". . . the statute provides that before any further proceedings are had against a party thus situated, the adverse party must, by written notice, require such party to appoint another attorney or to appear in person. [¶] It seems to us that [, where such notice was not given,] the court was without authority to proceed with the trial." (*McMunn* v. *Lehrke* (1915) 29 Cal.App. 298, 308 [155 P. 473].) In *McMunn*, the reviewing court reversed a default judgment entered in a case in which a party's attorney had "ceased to act as such," within the meaning of section 286, and the adverse party had not given the written notice required by that section.

Appellants have argued that all of the fault is that of respondent, for not monitoring his attorney more closely. We have discussed that contention fully, above, and reject it. While respondent's performance was not above criticism it was understandable and does not amount to a waiver of his legal right and protection under section 286.

In addition, some fault can be attributed to appellants. The procedural events from October 29, 1980, through August 7, 1981, described in detail

at pages 730 through 732 above, should have given appellants' counsel cause to suspect that something was wrong. Six documents which ordinarily would have generated some response were served by appellants' counsel, by mail, on respondent's counsel, but there was no response. Also, there was no appearance by respondent or his attorney at either of the hearings on the motions to dismiss. Those facts are not consistent with the usual conduct of a plaintiff's attorney engaged in litigation. We have noted that the clerk's notice of filing the order of dismissal, served by mail on respondent's attorney, was returned to the clerk by the post office marked "RETURN TO SENDER, NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD" (see p. 731, *ante*). It would seem that some of appellants' mail, similarly addressed to respondent's counsel, might also have been returned.

CONCLUSION

In the case at bench it is clear that the act of the trial court in granting the motion to dismiss and signing and filing the order of dismissal on August 7, 1981, was an act in excess of its authority and power to act. Thus, that order of dismissal was void. "The court may, . . . on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, last par.)

DECISION

The order appealed from is affirmed.

Klein, P. J., and Arabian, J., concurred.

A petition for a rehearing was denied August 28, 1985, and appellants' petition for review by the Supreme Court was denied October 24, 1985.