Filed 2/22/21  Gowdey v. Heseltine CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| DAVID GOWDEY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN HESELTINE, et al.,<br><br>        Defendants and Appellants. | A159690<br><br>(San Francisco County<br>Super. Ct. No. CGC-18-571227) |

Defendants John Heseltine, Bridget McNeill, and CB Trustees 2013 (CB Trustees) (collectively, Defendants), argue the trial court abused its discretion in denying their motion to set aside the default judgments entered in favor of plaintiff David Gowdey (Plaintiff).  We agree, and reverse the challenged order.

## BACKGROUND

In November 2018, Plaintiff filed a complaint, in propria persona, alleging breach of contract and other claims against Defendants, Daniel Doulton, and Does 1 through 10.  The complaint alleged as follows: Plaintiff is a resident of Singapore, Heseltine and McNeill are New Zealand residents, and CB Trustees is a New Zealand company.  Plaintiff and Heseltine entered into a loan agreement whereby Plaintiff loaned Heseltine $450,000 to buy

1

shares in XYZ, Inc.,[1] which Heseltine pledged as security for the loan in a separate stock pledge agreement.  With Plaintiff's consent, Heseltine subsequently transferred some of these shares to a trust (the Trust), and a second stock pledge agreement pledging these shares as security for the loan was executed by all three Defendants in their capacity as trustees of the Trust.[2]  The loan agreement prohibited Heseltine from relinquishing the shares before the loan was due in December 2019, and the stock pledge agreements prohibited transfer of the shares without Plaintiff's prior consent.  In March 2018, Heseltine breached the agreements by transferring shares without Plaintiff's consent.  In July 2018, Heseltine further breached the loan agreement by failing to immediately repay the loan upon Plaintiff's notice of the breach.  In October and November 2018, XYZ, Inc. rescinded Heseltine's share purchase and subsequent transfer of shares to the Trust and cancelled all shares involved in these transactions, resulting in a third breach because Heseltine and the Trust "involuntarily relinquished" the pledged shares.

Defendants failed to file an answer to the complaint and a default was entered against them on December 21, 2018.[3]  On July 30, 2019, following a prove-up hearing by declaration, the court entered a default judgment of more than $550,000 against Defendants in their individual capacities.[4]

---

[1] Like the parties, we refer to the company as XYZ, Inc., despite name changes during the events at issue here.

[2] The loan agreement and both stock pledge agreements are, by their terms, governed by California law.

[3] Doulton timely filed an answer (the complaint alleged he conspired with Heseltine to cover up the March 2018 share transfer).  Plaintiff subsequently dismissed the complaint as to Doulton and the Doe defendants.

[4] Plaintiff retained counsel prior to the prove-up hearing.

2

Notice of judgment was mailed to Defendants at New Zealand addresses on July 31, 2019.

On October 18, 2019, Defendants filed a motion seeking equitable relief from the defaults and default judgments. Heseltine filed a declaration averring that on December 10, 2018, acting on behalf of Defendants, he met with Doulton's attorney who "intimated" he would act on behalf of Defendants as well as Doulton to ensure responses to the complaint were filed.[5] During December, Heseltine and the attorney exchanged numerous emails about "payment of fees" and "specific facts and defenses to the Complaint," leading Heseltine to believe the attorney was representing Defendants in this case. Only after the deadline to file an answer had passed did the attorney inform Heseltine he was acting solely for Doulton.

Heseltine further averred that on May 27, 2019, he attempted to file in propria persona a case management statement on behalf of Defendants seeking permission to appear telephonically at the case management conference and request the defaults be set aside. The case management statement was rejected by the court because McNeill had not signed it and CB Trustees could not appear in propria persona. On June 12, Heseltine attempted to appear telephonically at the case management conference, only to learn that it had been cancelled. Heseltine learned of the default judgments in August, spoke with a number of attorneys, and retained counsel for Defendants on September 12.

Defendants' counsel also filed a declaration, averring that he contacted Plaintiff's counsel on September 19, 2019, in an attempt to negotiate a stipulated set aside. That attempt proved unsuccessful by the first week of

---

[5] Although Heseltine and the attorney met in New Zealand, the attorney is a member of the California State Bar.

3

October, and counsel filed the instant motion shortly thereafter. Counsel also submitted a proposed answer and averred, "Based on my knowledge of the facts underlying this dispute, Defendants have valid defenses to the allegations in the Complaint." The proposed answer included a general denial and 28 affirmative defenses.

After briefing, the trial court denied the motion, finding Defendants "have failed to demonstrate that they have a meritorious defense, have not articulated a satisfactory excuse for not presenting a defense to the original action and have not demonstrated diligence in seeking to set aside the default; despite acknowledging that they had notice of the case on May 20 [sic], 2019."

DISCUSSION

"A trial court has inherent power to vacate a default judgment on equitable grounds. [Citations.] 'One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' [Citations.] '[E]xtrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present.' [Citations.] [¶] To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate: (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.' [Citations.] When 'a default *judgment* has been obtained, equitable relief

4

may be given only in exceptional circumstances.' " (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1245–1246, fn. omitted (*Mechling*).)

"Trial court rulings on motions for relief from default are subject to an abuse of discretion standard. [Citation.] Even so, '[w]ith respect to setting aside a default judgment, it is the policy of the law to favor, whenever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial on the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made.' " (*Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.* (2020) 56 Cal.App.5th 894, 907–908 (*Luxury Asset*); accord, *Mechling, supra,* 29 Cal.App.5th at p. 1246.)

I.      *Meritorious Case*

To establish " 'a meritorious case,' . . . only a minimal showing is necessary. [Citation.] The moving party does not have to guarantee success, or 'demonstrate with certainty that a different result would obtain . . . . Rather, [it] must show facts indicating a sufficiently meritorious claim to entitle [it] to a fair adversary hearing.' " (*Mechling, supra,* 29 Cal.App.5th at p. 1246.)

The low threshold for this showing is demonstrated by *Rappleyea v. Campbell* (1994) 8 Cal.4th 975 (*Rappleyea),* where our Supreme Court reasoned: "Ordinarily a verified answer to a complaint's allegations suffices to show merit. [Citation.] The answer here was not verified, but neither was the complaint. Moreover, the answer did deny, admit, or otherwise respond to the allegations. And the Arizona lawyer who informally aided defendants declared under oath that he believed 'these Defendants have a very good (and certainly a justiciable) defense to the Plaintiff's claim.' On the combined strength of these facts, we believe defendants have sufficiently shown merit."

5

(*Rappleyea,* at p. 983.) *Mechling* further demonstrates the minimal showing required: "To be sure, a moving party may satisfy the meritorious defense factor by submitting a proposed pleading or a declaration averring there is such a defense. [Citation.] But we decline to impose such a requirement here." (*Mechling, supra,* 29 Cal.App.5th at p. 1247.)[6]

Defendants submitted a proposed answer and their attorney averred they have valid defenses. Under *Rappleyea* and *Mechling,* no more is required. In addition, Defendants point to facts supporting specific defenses. Defendants argue McNeill and CB Trustees signed the stock pledge agreement in their capacities as trustees of the Trust, the stock pledge agreement expressly limits their liability to the assets of the Trust, yet they were sued in their individual capacities and the judgment issued against them in their individual capacities. Defendants further argue Heseltine did not transfer shares in breach of the loan agreement in March 2018, pointing to a July 2018 email from Heseltine's representative asserting that he retained the shares and was therefore not in breach.

Plaintiff's arguments are unavailing. Defendants were not required to submit a verified answer or other evidence in support of their defense.[7] Defendants' defaults are not conclusive admissions to the allegations of the complaint for purposes of this motion; to find otherwise would doom every motion to set aside a default. Plaintiff's reliance on Heseltine's purported failure to repay the loan by the maturity date—a date occurring *after* the appealed-from trial court order issued—contravenes the longstanding

---

[6] Plaintiff argues that in *Mechling,* the movant was not the defendant, but rather the defendant's insurer. We fail to see how this renders the case distinguishable on this point.

[7] As in *Rappleyea,* the complaint here was not verified.

principle that " ' "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." ' " (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 442.)  Finally, it is not appropriate for this court to resolve the parties' arguments about the merits of Defendants' various defenses.  (*Ludka v. Memory Magnetics International* (1972) 25 Cal.App.3d 316, 323 ["it is improper in connection with a motion to vacate the default, for the court to go into the merits of the main case"].)  Defendants have satisfied the minimal showing required to establish a meritorious defense.

II.     *Satisfactory Excuse*

" 'Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable.  [Citations.]' [Citation.] . . . [¶] Reliance on a third party constitutes a satisfactory excuse only if it is reasonable.  [Citations.]  'With regard to whether the circumstances warranted reliance by the defendant on a third party, the efforts made by the defendant to obtain a defense by the third party are, of course, relevant.' " (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 507, fn. omitted.)

Plaintiff does not dispute that the facts asserted by Defendants, if believed, constitute a satisfactory excuse.  We agree with the implied concession that a defendant reasonably relies on an attorney to file an answer when the defendant and attorney have communicated multiple times about fees and defenses.

7

Plaintiff instead argues the trial court could discredit Heseltine's account because it was contradicted. First, Plaintiff points to the fact that Doulton filed his answer in propria persona. We fail to see how this contradicts Heseltine's averments regarding his communications with the attorney and his understanding of the attorney's representation of Defendants and Doulton. Second, Plaintiff highlights that neither McNeill nor CB Trustees averred that the attorney led *them* to believe he would represent Defendants. This also does not contradict Heseltine's declaration, which averred that Heseltine communicated with the attorney on behalf of all Defendants, suggesting the others had no direct contact with the attorney. Finally, Plaintiff argues that "most telling" is Defendants' failure to offer the email exchanges between Heseltine and the attorney to corroborate Heseltine's declaration. But Defendants *did* offer the emails: their trial court motion explained they considered the emails privileged but offered to submit them to the trial court for in camera review.

No record evidence contradicted Heseltine's averments regarding his communications with the attorney, and there was no basis for the trial court to discredit them without first reviewing the corroborating evidence Defendants offered to submit. Defendants established a satisfactory excuse.

III. *Diligence*

The final prong asks "whether defendants diligently tried to set aside the default once discovered. [¶] 'The greater the prejudice to the responding party, the more likely it is that the court will determine that equitable defenses such as laches or estoppel apply to the request to vacate a valid judgment.' [Citation.] Of the three items a defendant must show to win equitable relief from default, diligence is the most inextricably intertwined with prejudice. If heightened prejudice strengthens the burden of proving

8

diligence, so must reduced prejudice weaken it." (*Rappleyea, supra,* 8 Cal.4th at pp. 983–984.)

Plaintiff claims no prejudice. Defendants' motion was filed less than three months after Plaintiff's prove-up hearing and less than a year after the complaint was filed. The relevant evidence likely is primarily based on documents and the parties' testimony. We see no basis to find any prejudice to Plaintiff from setting aside the default. (See *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 740 [no showing "of missing witnesses, evidence destroyed, and the like, to establish prejudice"].) Defendants' burden of proving diligence is correspondingly weakened. (*Rappleyea, supra,* 8 Cal.4th at pp. 983–984.)

The trial court order did not mention prejudice, and found Defendants failed to act diligently despite notice as of May 2019.[8] In May and June, Defendants attempted to file a case management statement and appear at the case management conference to request the default be set aside. After learning of the default judgment sometime in August,[9] Defendants contacted attorneys and retained counsel by mid-September, and counsel promptly took steps to set aside the default.

Plaintiff complains that Defendants should have filed a motion to set aside the defaults at the time they attempted to file a case management

---

[8] Plaintiff suggests Defendants knew of the entry of default earlier, pointing to Plaintiff's declaration averring that he emailed Heseltine about the default in January 2019. Although Plaintiff's declaration attaches a copy of the email, we note that it does not show the recipient's email address and does not establish any knowledge by McNeill or CB Trustees. In any event, the trial court's diligence finding focused on Defendants' knowledge in May.

[9] The record is silent as to the date Defendants received notice, but the proof of service shows notice was sent on July 31, 2019, by United States mail to New Zealand addresses.

statement.  We decline to find the lack of diligence finding can be based on the fact that Defendants—New Zealand residents without counsel—attempted to seek guidance from the court on how to vacate the defaults rather than filing the proper motion.  Plaintiff also argues Defendants took no action between May and mid-September, but in fact Defendants attempted to make an appearance at the case management conference in June, contacted attorneys in August, and retained counsel in September.

In light of the absence of prejudice to Plaintiff, Defendants' two attempts to appear in the case in order to set aside the entries of default, and Defendants' prompt action upon learning of the default judgment, we conclude Defendants demonstrated diligence.  (*Mechling, supra,* 29 Cal.App.5th at p. 1248 [diligence shown where insurance company filed set aside motion five months after retaining counsel to defend claims against insured]; *Rappleyea, supra,* 8 Cal.4th at pp. 980, 984 [reviewing trial court order denying set aside; finding defendants showed diligence where minimal prejudice to plaintiff, defendants knew of the default several months before filing set aside motion but may not have understood the legal consequences, and defendants acted "quickly" after being told by the court they may face a default judgment by filing the set aside motion approximately a month and a half later]; *Luxury Asset, supra,* 56 Cal.App.5th at pp. 906, 913 [reviewing trial court order denying set aside; finding sufficient diligence where defendant knew of default judgment for almost a year before filing set aside motion but acted reasonably in first pursuing related challenges in other fora]; *Orange Empire National Bank v. Kirk* (1968) 259 Cal.App.2d 347, 355 [reviewing trial court order denying set aside; finding the defendant acted diligently where "a period of 2-3 months elapsed between the date when [the

defendant] obtained independent legal advice and the date the motion for relief was filed"].)

## DISPOSITION

The order denying the motion to vacate the defaults and default judgments is reversed.  Defendants are awarded their costs on appeal.

_____
SIMONS, Acting P.J.

We concur.

_____
NEEDHAM, J.

_____
SELIGMAN, J.*

(A159690)

---

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.