Filed 7/2/25  Mendoza v. Navarro CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BARBARA MENDOZA et al., | B333936 |
| Plaintiffs and Respondents, | Los Angeles County |
| v. | Super. Ct. No. 19STCV29385 |
| DANNY NAVARRO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Galanter Associates and Douglas F. Galanter for Defendant and Appellant.

Law Offices of Azuka L. Uzoh and Azuka L. Uzoh for Plaintiffs and Respondents.

Barbara Mendoza, Johnny Ramirez, and Lisa Granado filed a complaint against their landlord, Danny Navarro. Navarro failed to appear at trial, and the court entered judgment against him. More than two years later, Navarro filed a motion to vacate the judgment on grounds of extrinsic mistake. According to the motion, Navarro's attorney had abandoned him and lied about the status of the case. The court denied the motion because Navarro failed to show a mistake, due diligence, or a meritorious defense. On appeal, Navarro contends the court abused its discretion by denying his motion. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

### 1. *The complaint, trial, and judgment*

Navarro purchased a three-unit residential building in 2017. Mendoza, Ramirez, and Granado (Plaintiffs) were living in one of the units at the time, and Navarro continued to rent it to them.

In August 2019, Plaintiffs filed a complaint against Navarro asserting he failed to make repairs to the property, violated the Los Angeles Housing Code, and subjected Plaintiffs to severe emotional abuses. They alleged Navarro refused to fix electrical problems, a lack of hot water, leaks, mold, and a rodent infestation. Navarro, acting in pro per, filed an answer that generally denied the allegations and asserted 19 affirmative defenses.

The trial was set for April 12, 2021. Navarro did not appear, and the court set a "trial/prove up" hearing on May 12, 2021. Plaintiffs presented oral testimony and submitted 18 exhibits into evidence.

On May 21, 2021, the court entered judgment against Navarro and in favor of Plaintiffs for $155,660.80.  The court issued an abstract of judgment on March 22, 2022.

## 2.   *The motion to vacate the judgment*

On September 21, 2023—more than two years after the court entered judgment—Navarro filed a motion for an order vacating the judgment.  Navarro made the motion on the grounds that the judgment was the result of "extrinsic mistake, in that [Navarro], who had engaged a licensed attorney to represent and defend him in this action, was abandoned by that attorney, who, unbeknownst to [Navarro], never entered an appearance in this action, failed to appear for trial . . . and continued . . . to induce [Navarro] to believe that he was properly representing [Navarro] and was taking action to vacate the Judgment."

Navarro argued he was diligent in seeking relief—despite the significant delay—because he believed his attorney's assurances that he was handling the case.  Navarro asserted it was not clear until July 31, 2023 that the attorney was not working on the case, at which point he promptly hired new counsel.

## 3.   *Navarro's declaration*

According to a declaration Navarro submitted in support of his motion, he reviewed the complaint after being served in September 2019.  Navarro believed the claims were "without merit," and he characterized Plaintiffs' factual assertions as "either false, exaggerated, misleading, or a combination thereof."

Navarro initially thought he could represent himself in the case.  He filed an answer in January 2020 and appeared at two case management conferences.  The court set trial for January 11, 2021.

As the trial date approached, Navarro decided to retain a lawyer to handle the litigation. An acquaintance referred Navarro to Shawn Golan. Navarro retained Golan in December 2020 based on Golan's representation of himself as an experienced trial attorney. Navarro assumed Golan was handling the case properly and had "everything regarding [his] defense under control."

In January 2021, Navarro asked Golan about the approaching trial date. Golan responded that the court had continued the trial and the next hearing was a final status conference on April 6, 2021. Navarro and Golan continued to communicate regularly through email and phone calls, but Golan never mentioned the trial date.

In June 2022, Navarro received a copy of an abstract of judgment showing a judgment had been entered against him for $155,660.80. Navarro was shocked by this discovery, and he contacted Golan.[1] Golan gave "no explanation as to what had happened," but he promised to "take care of having" the abstract of judgment and any liens on the property removed. Navarro and Golan discussed bringing claims against Plaintiffs and evicting them, and Golan said he would prepare a complaint. Navarro trusted Golan and believed he was representing him properly.

Navarro noticed the abstract and lien were still listed on the property's record as of August 18, 2022. Navarro contacted Golan, who promised he would file a motion to set them aside. Navarro and Golan continued to communicate regularly over the next few months. Golan repeatedly promised he was working on

---

[1] The declaration states Navarro and Golan first discussed the abstract shortly after "June 21, 2023." Presumably, this is a typographical error and should say "June 21, 2022."

4

a motion to remove the abstract and lien, but he never provided documentation of his efforts.

In June 2023, Golan told Navarro he had scheduled a hearing to remove the abstract and lien. Navarro met Golan outside the courthouse on the day of the hearing. At first, Golan claimed the hearing had been postponed. Later that day, he admitted he had "blown it" with the case. Golan told Navarro he failed to appear at the April 2021 trial and had fabricated the June 2023 hearing. Still, Golan promised he would get the judgment removed.

Navarro was upset, shocked, and surprised by Golan's admissions. However, because he had paid Golan and "believed he finally was being truthful about his failures and neglect of the" case, Navarro agreed to give Golan "one more chance to make things right."

Golan said he had reserved another hearing date for a motion to vacate the judgment, but he never sent Navarro the motion. Then, in late July 2023, Navarro discovered Golan's supposed business address was a residence at which Golan did not live. Navarro confronted Golan about the address.

On July 31, 2023, Golan sent Navarro an email threatening to file a police report against him, warning him to cease contact, and accusing him of failing to pay for his work. Navarro asserted the latter claim is false, as he paid Golan a $2,000 retainer "at the outset of his engagement," plus $500 in October 2021.

Upon reading the email, Navarro "realized with certainty" that Golan was not going to do anything to vacate the judgment. Navarro immediately took steps to find a new attorney, and he hired his present counsel, Douglas Galanter, on August 10, 2023. Since retaining Galanter, Navarro had learned Golan never

formally appeared as his attorney, trial took place in 2021, and Golan never filed a motion to vacate the judgment.

Navarro asserted he believed and trusted Golan up until June 2023, when Golan admitted wrongdoing. Navarro believed he acted reasonably by assuming Golan was representing him competently and ethically.

**4.     *The opposition and reply***

Plaintiffs opposed the motion on the grounds that there was no extrinsic mistake, Navarro did not act with reasonable diligence, Navarro is unlikely to prevail on the merits, and Plaintiffs would suffer prejudice. Plaintiffs' counsel submitted a declaration in support of the opposition. Counsel said he told Navarro before trial that Golan was not representing him in court. According to counsel, Navarro simply ignored that fact.

Navarro filed a reply urging the court to disregard the opposition as untimely, and he asserted 34 objections to Plaintiffs' counsel's declaration.[2] Navarro accused counsel of improperly communicating with him directly, rather than through his attorney. He also noted counsel did not sign his declaration under penalty of perjury.

In response to Navarro's objections, Plaintiffs' counsel filed a supplemental declaration under penalty of perjury.

**5.     *The hearing and order***

The court considered Navarro's motion at a hearing on October 30, 2023. Navarro again objected to the untimely opposition papers and Plaintiffs' counsel's declarations. The court stated it would not rely on counsel's declarations, and

---

[2]     The court sustained 23 of the objections and overruled 11.

it asked Navarro if he wanted an opportunity to file a response to the supplemental declaration. Navarro responded he did not.

After the hearing, the court issued an order denying Navarro's motion to set aside the judgment. The court explained that, "[c]onsidering the timing of [Navarro's] learning about the abstract of judgment after judgment was entered in the case, and the long period of inaction by [Navarro] or counsel since the underlying events and [Navarro's] discovery of the judgment, the Court finds that [Navarro's] timing was not reasonable, and that he did not act diligently in seeking relief." The court noted Navarro "attributes his counsel's incompetence as an extrinsic mistake, but [Navarro] has failed to provide an attorney declaration of fault from Golan." The court also found Navarro "has failed to demonstrate that he has a meritorious case. Thus, [Navarro] has not met his burden of showing extrinsic mistake or fraud."

Navarro timely appealed.

## DISCUSSION

Trial courts have equitable powers to set aside judgments where extrinsic fraud or mistake prevented a fair adversarial hearing. (See *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 470–471 (*Kulchar*); *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 737 (*Aldrich*).) "In this context the terms 'fraud' and 'mistake' have been given a broad meaning by the courts, and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." (*Aldrich*, at p. 738.) An attorney's negligence may constitute an extrinsic mistake under some circumstances. (See *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147 [noting relief for extrinsic mistake has "been extended to cases involving

7

negligence of a party's attorney in not properly filing an answer"]; *Aldrich,* at p. 738 [finding extrinsic mistake where a client's attorney abandoned him after being suspended from the practice of law]; *Orange Empire Nat'l Bank v. Kirk* (1968) 259 Cal.App.2d 347 (*Orange Empire*) [finding extrinsic fraud or mistake where the defendant did not know his attorney failed to appear and defend him at trial].)

Because equitable relief is available only in exceptional circumstances once a judgment has been entered, it is not enough to show the existence of an extrinsic mistake. Instead, the moving party also must demonstrate (1) a satisfactory excuse for not presenting a defense, (2) a meritorious case, and (3) diligence in seeking to set aside the issue once discovered. (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314–315, disapproved on other grounds in *California Capital Ins. Co. v. Hoehn* (2024) 17 Cal.5th 207, 215; *Aldrich, supra*, 170 Cal.App.3d at p. 738.) The court may deny relief even if the responding party suffered no prejudice by the delay. (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 856–857.) However, prejudice is a factor the court may consider when determining whether the moving party acted diligently. (*Ibid*.) The greater the prejudice, the greater the diligence required for relief. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 833–834 (*Falahati*).)

We review an order on a motion to vacate a judgment for an abuse of discretion. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*).) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain*

8

(1988) 44 Cal.3d 474, 478–479.)  Moreover, "we will not disturb the trial court's factual findings where . . . they are based on substantial evidence.  It is the province of the trial court to determine the credibility of the declarants and to weigh the evidence." (*Falahati, supra,* 127 Cal.App.4th at p. 828.)

Navarro has not shown the trial court abused its discretion here.  Among other reasons for denying Navarro's motion, the court found he "did not act diligently in seeking relief."  The court's conclusion is reasonable and finds sufficient support in the record, especially considering the high degree of prejudice Plaintiffs would suffer if the court granted relief.  (See *Rappleyea, supra*, 8 Cal.4th at p. 984 [the prejudice to a plaintiff is greater if the court must reverse a judgment and divest the plaintiff of a property right]; *Falahati, supra*, 127 Cal.App.4th at p. 834 [as a general rule, "setting aside [a] judgment and disturbing the plaintiff's justifiable reliance on the award" is highly prejudicial to a plaintiff].)

It is undisputed that Navarro waited more than a year after discovering the judgment to move to vacate it, and the trial court reasonably could have found this delay reflects a lack of diligence.  According to Navarro, he confronted Golan about the judgment in June 2022, and Golan "gave [him] no explanation as to what had happened."  Even assuming Navarro reasonably believed Golan had been representing him appropriately up until that point, Golan's failure to offer any explanation for the existence of the judgment should have caused Navarro to question that belief.  At that point, Navarro could have consulted other counsel or checked the court's docket on his own.  At the very least, he should have pressed Golan for some sort of explanation.

Had Navarro taken any of those steps, he likely would have discovered the "extrinsic mistake" significantly sooner. Navarro instead simply continued to rely on Golan and take him at his word.  The court reasonably could have found Navarro's inaction demonstrates a lack of due diligence.  (See *Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 36 [denying equitable relief based on extrinsic fraud where a "simple review of the [court] file" would have revealed the fraud]; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 508 [denying equitable relief where the moving party failed to "inquire as to the status of the case or to follow up with its insurer" after becoming aware of a default]; see also *Kulchar, supra*, 1 Cal.3d at p. 473 [equitable relief is "denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained"].)

Navarro claims he did not move to vacate the judgment earlier because he believed Golan would resolve the issue on his behalf.  According to Navarro, he trusted Golan completely until June 2023, when Golan admitted he had not appeared at trial, had not sought relief from the judgment, and had fabricated the existence of a hearing on a motion to vacate.  Despite those admissions, Navarro gave Golan another opportunity to fix the issue.  According to Navarro, it was not until July 31, 2023 —more than a month after Golan admitted his misconduct— that he realized definitively that Golan would not move to vacate the judgment.

The trial court reasonably could have rejected Navarro's explanation for the delay.  Given Golan repeatedly failed to deliver on his promises, it is difficult to believe Navarro continued to trust him completely until June 2023.  Even

if we take Navarro at his word, he fails to offer a credible explanation for giving Golan yet another opportunity after learning Golan had been lying about the case for years.  Given the nature and severity of Golan's misconduct, Navarro's contention that it took him until July 31, 2023 to "realize[ ] with certainty that . . . [Golan] was not going to do anything to vacate the Judgment" strains credulity to the point that it calls into question the veracity of his entire declaration.  (See *People v. Vang* (2009) 171 Cal.App.4th 1120, 1130 [the trier of fact may "disbelieve a witness who deliberately lies about something significant because experience has taught us that a deliberate liar cannot be trusted"].)  At the very least, it provides sufficient grounds to conclude Navarro acted unreasonably and failed to exercise due diligence.

Navarro's reliance on *Aldrich, supra*, 170 Cal.App.3d 725 and *Orange Empire, supra*, 259 Cal.App.2d 347 is misplaced.  In *Aldrich*, the plaintiff's attorney advised him in 1979 that it would take up to five years for his personal injury case to go to trial.  The attorney filed an amended complaint in September 1980 and then disappeared.  (*Aldrich*, at p. 733.)  The plaintiff tried to contact the attorney over the next few years, but his efforts were limited due to "serious problems with his injuries." (*Id*. at p. 734.)  In 1984, the plaintiff grew concerned that the five-year deadline was approaching, and he contacted a new attorney to help him locate his original counsel.  (*Ibid*.)  The new attorney discovered the action had been dismissed several years earlier, shortly after the original counsel had been suspended from the practice of law.  (*Id*. at p. 732.)  With the assistance of new counsel, the plaintiff filed a motion to vacate the dismissal, which the trial court granted.  (*Id*. at pp. 732, 735.)

11

The Court of Appeal affirmed the order vacating the dismissal on grounds of extrinsic mistake. (*Aldrich, supra*, 170 Cal.App.3d at pp. 730, 738.) The court explained, "[w]here a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay." (*Id*. at p. 739.) The court determined the plaintiff had demonstrated sufficient diligence in seeking relief, noting he filed the motion to vacate 21 days after learning his case had been dismissed. (*Id*. at p. 740.) The court stated, although the plaintiff did not "assiduously seek out his attorney[,] . . . a client should not be required to act as a 'hawklike inquisitor' of his own counsel, nor perform incessant checking on counsel." (*Id*. at pp. 739–740.)

*Orange Empire* also involved attorney misconduct. In that case, the court entered default against the defendant because his counsel failed to appear. (*Orange Empire, supra*, 259 Cal.App.2d at p. 350.) The case went to trial in March 1966, and counsel again failed to appear. A few days later, the opposing party called the defendant directly and asked for payment on the judgment. (*Id*. at pp. 350–351.) The defendant immediately contacted his attorney, but the attorney was out of town and unreachable. When the attorney returned, he told the defendant he would review the case. (*Id*. at p. 351.) On July 1, the defendant sought the advice of other counsel, who told him he needed to apply for relief from default. The defendant contacted his original attorney, who assured him he would take care of the default. After the attorney stopped responding, the defendant retained new counsel. (*Id*. at pp. 351–

12

352.)  New counsel filed a motion to set aside the judgment in October 1966, which the trial court denied.  (*Id*. at p. 352.)

The Court of Appeal reversed, concluding the trial court abused its discretion by denying the motion.  (*Orange Empire, supra*, 259 Cal.App.2d at pp. 352, 355.)  On the issue of the defendant's diligence, the court explained that, "[w]hile a three-month period transpired between the time [the defendant] first became cognizant of the judgment and the date he sought other legal advice, and although a period of 2–3 months elapsed between the date when [the defendant] obtained independent legal advice and the date the motion for relief was filed, such delay should not be fatal. . . .  [The defendant] is a medical doctor and, being a professional man, would certainly appreciate the necessity for conferring complete confidence in his attorney.  Once he ascertained the proper procedures for obtaining relief, he retained new counsel and moved for relief within a reasonable time.  He acted diligently in making his motion after learning of the entry of the default judgment and after ascertaining the legal remedies available to him in order to secure the necessary relief."  (*Id*. at p. 355.)

*Aldrich* and *Orange Empire* are readily distinguishable.  In those cases, the moving parties sought relief within a few weeks (*Aldrich*) and months (*Orange Empire*) of discovering the judgments against them.  Here, Navarro waited more than a year to do so.

More importantly, the moving parties in *Aldrich* and *Orange Empire* offered credible explanations for the delays in discovering the extrinsic mistakes that justified the delays.  In *Aldrich,* the attorney explicitly told the plaintiff it could take up to five years for the case to go to trial, which helps to explain

13

why it took so long for the plaintiff to recognize the attorney had abandoned him.  In addition, the plaintiff was suffering complications from severe injuries.  In *Orange Empire,* the defendant immediately contacted his counsel after learning of the judgment, but counsel was out of town and unavailable.  Shortly after counsel responded, the defendant consulted another attorney.  The defendant gave the original attorney an opportunity to resolve the issue, but he retained new counsel as soon as it became clear the attorney was unable or unwilling to do so.

Navarro did nothing of the sort here.  Like the defendant in *Orange Empire*, Navarro confronted his attorney soon after discovering the existence of the judgment.  However, unlike the *Orange Empire* defendant, Navarro did not immediately seek outside advice when his attorney failed to offer a credible explanation for the judgment.  Instead, Navarro simply took Golan at his word that he would look into the matter and fix it.  Though it may have been reasonable to give Golan a chance to fix his mistake—as the defendant did in *Orange Empire*—it was not reasonable to continue giving him chances for months on end.

Nor did it take a "hawklike inquisitor" to discover Golan's malfeasance.  According to Navarro, Golan displayed the "same pattern" of behavior over the course of many months.  To the extent Navarro still had doubts, they should have been resolved conclusively when Golan admitted he had not appeared at trial and had fabricated a hearing on a motion to vacate the judgment.  Despite those admissions, Navarro purportedly continued to rely on Golan for more than a month.  Under these circumstances, the court was justified in concluding Navarro's continued reliance on Golan was either not credible or not reasonable.

14

In sum, the record reasonably supports a finding that Navarro did not act with due diligence. Accordingly, the court did not abuse its discretion when it denied Navarro's motion to vacate the judgment on equitable grounds. Because a lack of due diligence provides sufficient grounds to deny a request for equitable relief, we need not consider Navarro's arguments concerning the court's other reasons for denying his motion.

## DISPOSITION

We affirm the order denying Navarro's motion to vacate the judgment. Plaintiffs shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

15